**In re Kenny NORTON, Deborah L. Meece, Helen Reynolds, Thomas L. Hargrove, Dale Lavinia Davidson, David L. Givens, Patricia A. Lewis, Debtors.**

**Kenny NORTON, et al., Plaintiffs,**

v.

**TENNESSEE DEPARTMENT OF SAFETY, Defendant.**

Bankruptcy Nos. 386–02425, 386–02032, 386–04992, 186–03851, 386–03897, 386–03950 and 386–02842.

Adv. No. 387–0047.

United States Bankruptcy Court, M.D. Tennessee.

Aug. 10, 1987.

William E. Young, Asst. Atty. Gen., Nashville, Tenn., for Tenn. Dept. of Safety.

Thomas F. Bloom, Rothschild & Lefkovitz, Nashville, Tenn., for debtors.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

Section 55–12–106(15) of the Tennessee Financial Responsibility Act discriminates against debtors in bankruptcy in violation of 11 U.S.C. § 525(a).

The following are findings of fact and conclusions of law. Bankr.R. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

### I.

These Chapter 13 debtors were involved in unrelated prepetition automobile accidents. Each scheduled the accident-related claims as dischargeable debts. All were without insurance. Each debtor's driver's license was subject to revocation under the Tennessee Financial Responsibility Act ("TFRA"). TENN.CODE ANN. § 55–12–101 et seq. (1980 & Supp.1986).

Debtor Kenny Norton's ("Norton") accident occurred on February 4, 1986. He filed Chapter 13 on June 9, 1986. The Department of Safety ("Department") noticed him on November 10, 1986 that his driver's license would be revoked unless he complied with TFRA. On December 1, 1986, Norton's attorney advised the Department of the bankruptcy filing in an effort to avoid license revocation. Norton's license was revoked on January 22, 1987.

Debtor Deborah L. Meece's ("Meece") accident occurred on July 26, 1985. Meece agreed to accept responsibility for the damages under TENN.CODE ANN. § 55–12–

106(7)[1] to avoid license revocation. Her Chapter 13 was filed on May 12, 1986. Meece failed to fulfill the conditional agreement and her license was revoked on September 23, 1986.

Debtor Helen Reynolds' ("Reynolds") accident occurred on June 25, 1986. Reynolds received the Department's notice of pending license revocation dated November 3, 1986. She filed Chapter 13 on November 20, 1986. Reynolds' license was revoked on January 22, 1987.

Debtor Thomas L. Hargrove's ("Hargrove") accident occurred on October 7, 1983. A judgment for accident-related damages was entered against him in state court. Hargrove filed Chapter 13 on September 15, 1986. His driver's license was revoked on September 25, 1986 for failure to satisfy the judgment within 60 days pursuant to TENN.CODE ANN. § 55–12–118.[2]

Debtor Dale Lavinia Davidson's ("Davidson") accident occurred on February 2, 1985. Davidson filed Chapter 13 on September 17, 1986. The Department mailed Davidson a revocation notice on January 26, 1987 and revoked her license on February 15, 1987.

Debtor David L. Givens' ("Givens") accident occurred on April 24, 1986. Givens filed Chapter 13 on September 19, 1986. The Department's revocation notice was dated January 15, 1987. Givens' license was revoked on February 4, 1987.

Debtor Patricia A. Lewis' ("Lewis") accident occurred on March 30, 1986. Lewis filed Chapter 13 on July 8, 1986. The revocation notice was dated September 1, 1986 and her license was revoked on September 21, 1986.

## II.

Under TFRA, the driver's license of an owner or operator of an automobile who is involved in an accident resulting in injury, death or property damage in excess of $200 is subject to revocation unless the offender can prove financial security to the Department. Acceptable proof of financial security includes insurance coverage, a deposit of cash, a bond, or releases by all parties. TENN.CODE ANN. § 55–12–105(b) (1980 & Supp.1986).

License revocation can be avoided if the licensee falls within one of 15 exceptions to revocation in § 55–12–106. The 15 subparagraphs of TENN.CODE ANN. § 55–12–106 are reproduced in the margin[3] to ex-

---

1. *See* note 3 *infra.*

2. *See* note 5 *infra.*

3. Section 55–12–106 of Tennessee's Financial Responsibility Act reads in full as follows:

The requirements of security and revocation contained in this chapter shall not apply to:

(1) An operator or owner if such owner had in effect at the time of the accident an automobile liability policy or bond with respect to the vehicle involved in the accident, except that an operator shall not be exempt under this subdivision if at the time of the accident the vehicle was being operated without the owner's permission, either expressed or implied;

(2) An operator who is not the owner of the vehicle involved in the accident if there was in effect at the time of the accident an automobile liability policy or bond with respect to his driving a vehicle not owned by him;

(3) An operator or owner whose liability for damages resulting from the accident is, in the judgment of the commissioner, covered by another form of liability insurance policy or bond;

(4) Any owner qualifying as a self-insurer or to any operator of a vehicle owned by a person qualifying as a self-insurer as outlined in § 55–12–111;

(5) Any operator or owner of a motor vehicle involved in an accident wherein no injury or damage was caused to the person or property of anyone other than such operator or owner;

(6) An owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, either expressed or implied, or was parked by a person who had been operating such motor vehicle without such permission;

(7) Any owner or operator who shall submit on or before the date of revocation proof satisfactory to the commissioner that he has accepted liability for the accident and has entered into an agreement concerning the payment of their damages satisfactory to all parties claiming damages. This exemption shall not apply, however, if such owner or operator shall fail to carry out the terms of the agreement. The commissioner may at any time within three (3) years after the accident, upon notice of such failure, take any

hibit one of the problems here under attack: There are many owners and operators excepted from the license revocation process; among those entitled to avoid license revocation, only debtors in bankruptcy must pay "a restoration fee of sixty-five dollars ($65.00)." TENN.CODE ANN. § 55–12–106(15) (1980 & Supp.1986).

If license revocation has occurred, driving privileges can be restored by complying with § 55–12–108.[4] All who seek reis-

action that he might have taken had such agreement not been made;

(8) Vehicles owned by the United States, this state or any political subdivision of this state or any municipality therein; or to the operator of any such vehicle so owned, when such vehicle is involved in an accident;

(9) Any vehicle owned and operated by a carrier subject to the jurisdiction of the public service commission of Tennessee or the interstate commerce commission;

(10) Any person licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall be required only to furnish proof of financial ability to satisfy any judgment or judgments rendered against such person in his capacity as owner of the motor vehicle, and shall not be required to furnish proof of its financial ability to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident;

(11) A driver or owner of a vehicle which at the time of the accident was parked, unless such vehicle was parked at a place where parking at the time of the accident was prohibited by any applicable law or ordinance, or unless the vehicle was parked in an otherwise unlawful manner;

(12) Any person employed by the government of the United States, while such person is acting within the scope of his office or employment and is involved in a motor vehicle accident;

(13) An owner or operator of any vehicle where there is no physical contact with another vehicle or object or person unless a judgment has been obtained;

(14) A driver or owner of a vehicle who has submitted to the commissioner on or before the date of revocation notarized releases executed by all parties who have previously filed claims with the department as a result of the accident; or

(15) Any person who has obtained a discharge in bankruptcy that discharged all claims against the person because of the accident listed in the petition; provided, however, that the discharge shall not relieve the person from the requirements of giving and maintaining proof of financial responsibility as required by § 55–12–126 and such person must pay a restoration fee of sixty-five dollars ($65.00), and pass the driver's license examination.

TENN.CODE ANN. § 55–12–106 (1980 & Supp. 1986).

4. TENN.CODE ANN. § 55–12–108(a) reads as follows:

(a) Any license, registration, or nonresident's operating privilege suspended or revoked under authority of this chapter shall remain suspended or revoked and shall not be renewed, nor shall any license or registration be issued to such person until:

(1) Such person whose driver's license and registration has been suspended by authority of § 55–12–104 shall file an accident report and pay a restoration fee of twenty-five dollars ($25.00);

(2) A court has rendered a final judgment which relieves the revoked person of any liability for the accident for which failure to deposit security caused revocation;

(3) One (1) year from the date of the accident has expired and proof is submitted that no court action has been brought as a result of the accident or when the revoked party has deposited security;

(4) A court has rendered a judgment and such judgment is paid, payment of which relieves the revoked party of any further liability for the accident for which failure to deposit security caused revocation;

(5) Such owner or operator files with the commissioner notarized releases executed by all parties who have previously filed claims with the department as a result of the accident;

(6) Such person submits a discharge in bankruptcy which discharges all claims of persons involved in the accident with him; provided, however, that the discharge from payment of the claims shall not relieve the person from the financial responsibility requirements specified in subdivision (8) of this section;

(7) Such owner or operator submits proof satisfactory to the commissioner that he has accepted liability for the accident and has entered into an agreement satisfactory to all parties claiming damages concerning the payment of their damages. However, if such owner or operator shall fail to carry out the terms of his agreement, the commissioner may at any time within three (3) years after the accident upon notice of such failure, take any action that he might have taken had such agreement not been made; or

(8) Such person, in addition to the requirements of subdivisions (3), (4), (5), (6), and (7) of this section for restoration of privileges, shall also give and maintain proof of financial responsibility as required under § 55–12–126, pay a sixty-five dollar ($65.00) restoration fee

suance of a revoked license under § 55–12–108, including bankruptcy debtors, must pay a $65 restoration fee. TENN.CODE ANN. § 55–12–108(a)(8) (1980 & Supp. 1986).

Section 55–12–118 [5] imposes revocation if a final judgment entered as a result of an accident remains unpaid for 60 days. A license revoked under § 55–12–118 can be reinstated as allowed in § 55–12–108. Revocation can be avoided if the parties submit an agreement for payment of damages before revocation. The $65 restoration fee is not required to avoid revocation under § 55–12–118.

All seven debtors now maintain automobile liability insurance as proof of financial responsibility. *See* TENN.CODE ANN. § 55–12–126(a) (1980 & Supp.1986). All debtors have passed a driver's license examination. Debtors refuse to pay the $65 "restoration fee" and claim the $65 fee under § 55–12–106(15) to avoid revocation and under § 55–12–108(a)(8) to restore driving privileges is applied discriminatorily against debtors in violation of 11 U.S.C. § 525. Debtors also assert that post-petition revocation of their drivers' licenses violates the automatic stay.

### III.

"Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez v. Campbell*, 402 U.S. 637, 644, 91 S.Ct. 1704, 1708, 29 L.Ed.2d 233, 239 (1971). There are preliminary questions of interpretation of the Tennessee statute.

Under TFRA, a debtor "who has *obtained a discharge* in bankruptcy that discharged all claims against the person because of the accident listed in the petition" may avoid revocation of a driver's license. TENN.CODE ANN. § 55–12–106(15) (1980 ed. & Supp.1986) (emphasis added). A debtor whose driver's license has already been revoked who "*submits a discharge* in bankruptcy which discharges all claims of persons involved in the accident with him" may have driving privileges reinstated. TENN.CODE ANN. § 55–12–108(a)(6), (8) (1980 ed. & Supp.1986) (emphasis added).

"Discharge" is a term of art in bankruptcy cases. In a Chapter 7 case the court "shall grant" the debtor a discharge if the debtor is eligible under 11 U.S.C. § 727. These debtors have filed Chapter 13 cases. Under 11 U.S.C. § 1328(a), the discharge in a Chapter 13 case is entered "as soon as practicable after completion by the debtor of all payments under the plan" or is entered when the court, after notice and a

and pass the driver's license examination as a condition precedent to the restoration of such privileges.
TENN.CODE ANN. § 55–12–108(a) (1980 & Supp.1986).

**5.** TENN.CODE ANN. § 55–12–118 reads as follows:

(a) The commissioner, upon receipt of a certified copy of final judgment, shall forthwith revoke the operator's license and all registrations of any resident of this state, and any nonresident's operating and registration privileges in this state against whom judgment is rendered, if the same shall not be paid within sixty (60) days from the date of final judgment, and no restriction as to time based upon the commissioner's authority elsewhere in this chapter shall be a bar to such action under the authority of this section; provided, however, any judgment paid to the extent of the limits of financial responsibility specified in § 55–12–102 shall, for the purpose of this section, be considered paid.

(b) Subsection (a) of this section shall not apply if the parties to the judgment submit on or before the date of revocation proof satisfactory to the commissioner that the parties have entered into an agreement satisfactory to all parties concerning the payment of their damages.

(c) Any license or registration revoked under the authority of this section shall remain revoked until it stayed, satisfied in full as to the extent outlined in subsections (a) or (b) of this section and until such person whose license and registration were revoked shall give and maintain proof of financial responsibility as required by § 55–12–126, pay a sixty-five dollar ($65.00) restoration fee as required by § 55–12–129, and pass a driver license examination as a condition precedent to the restoration of such privileges.
TENN.CODE ANN. § 55–12–118 (1980 & Supp. 1986).

hearing, grants the debtor a "hardship" discharge under 11 U.S.C. § 1328(b).

These debtors have not received discharges in their Chapter 13 cases. No one of these debtors "has obtained a discharge" or can "submit a discharge" for purposes of TFRA.

A literal interpretation of the words in TFRA leads to troublesome results. Under Tennessee law, a driver is entitled to only 20 days' notice before license revocation under TENN.CODE ANN. § 55–12–105(c) (1980 ed. & Supp.1986). It is difficult to conceive of facts where a Chapter 13 debtor could accomplish the filing, confirmation and consummation of a plan in time to obtain or submit a discharge to avoid license revocation. It would be the rarest happenstance that the timing of the accident, the action by the Department to revoke the debtor's driver's license, the filing of the bankruptcy case and the entry of a discharge would coincide to permit a Chapter 13 debtor to comply with TFRA.

It is conceivable that TFRA was designed without focus on the special problems of Chapter 13 debtors. If the Depart-ment or the Tennessee courts were to interpret TFRA to exclude Chapter 13 debtors from avoidance of license revocation under § 55–12–106(15) or from reinstatement prior to actual entry of a discharge under § 55–12–108, interesting questions of conflict with 11 U.S.C. § 525 would be presented which are not raised by these parties.

The Department of Safety has not argued that these debtors' licenses were revoked for reasons other than non-payment of the $65 restoration fee. It has never been the Department's position that the debtors were ineligible for revocation avoidance or license reinstatement because entry of discharge is delayed in Chapter 13 cases. Rather, it seems to be the Department's position that it is appropriate to interpret TFRA, and in particular §§ 55–12–106(15) and 55–12–106(6), (8), to apply to Chapter 13 debtors who have scheduled a dischargeable debt resulting from an automobile accident and for whom a discharge is available when administration of the case is complete.[6]

The debtors in these consolidated cases fall into two classes. Only debtor Norton

---

**6.** This construction of TFRA is consistent with case law interpreting other similar statutes. For example, in *Duffey v. Dollison*, 734 F.2d 265 (6th Cir.1984) the Ohio statute provided that an order suspending a driver's license can be vacated "upon proof that such judgment is ... satisfied in full." OHIO REV.CODE ANN. § 4509.40 (Baldwin 1975). The Ohio courts construed the statute to mean that a discharge in bankruptcy constitutes payment in full. *See House v. O'Grady*, 35 Ohio Misc. 20, 299 N.E.2d 706 (1973). Although the Duffey's request for reinstatement of driving privileges was presented prior to the entry of a discharge, reinstatement was denied not for lack of discharge, but because the debtors had not supplied proof of future financial responsibility. 734 F.2d at 267. The *Duffey* court observed that the Department of Motor Vehicles "while recognizing that the judgment debts were *subject to discharge* ... nevertheless refused to vacate the order of suspension...." 734 F.2d at 267 (emphasis added). The Sixth Circuit reached the § 525 question in *Duffey*.

Similarly, in *Briner v. Charnes (In re Briner)*, 10 B.R. 850 (Bankr.D.Colo.1981), the Colorado Motor Vehicle Financial Responsibility Act provided "a discharge in bankruptcy ... shall relieve the judgment debtor" from proof of financial security. COLO.REV.STAT. § 42–7–402(2) (1984). The *Briner* court faced the question whether the "discharge" language in the Colora-do statute precluded a pre-discharge Chapter 13 debtor from revocation avoidance. The court concluded 11 U.S.C. § 525 prohibits discrimination against a debtor who chooses to file Chapter 13. 10 Bankr. at 852. *See also In re Heath*, 3 B.R. 351, 354 (Bankr.N.D.Ill.1980) ("[I]t would be anomalous to grant a debtor protection from discriminatory actions in a liquidation proceeding and deny him the same protection in a rehabilitation (Chapter 13) proceeding.")

There is implicit support for this construction in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Revocation of the debtor's driver's license in *Perez* occurred after the bankruptcy petition but before discharge. The Arizona statute provided that a discharge would not excuse license revocation. The Supreme Court found impermissible interference with the Bankruptcy Act notwithstanding that the debtors did not have a bankruptcy discharge in hand. The court implicitly recognized that listing the dischargeable debt in the bankruptcy schedules invoked the special protections of bankruptcy though technical entry of discharge occurred months later. *See also In re Cerny*, 17 B.R. 221 (Bankr.N.D.Ohio 1982) (providing for payment of a debt through a Chapter 13 plan is sufficient to satisfy the Ohio Financial Responsibility Act notwithstanding that the debtors moved for license restoration before completion of the plan and entry of discharge).

attempted to avoid license revocation under § 55–12–106(15). Norton's effort to avoid revocation failed only because he did not pay the $65 restoration fee. The other six debtors each experienced revocation and then attempted to reinstate driving privileges under TENN.CODE ANN. § 55–12–108(a)(6), (8). These six debtors were denied license restoration only because they did not pay the $65 restoration fee.

## IV.

11 U.S.C. § 525 in its 1978 form intended to codify the Supreme Court's holding in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In pertinent part, § 525 reads:

> [A] governmental unit may not ... revoke ... a license ... to ... a person that is ... a debtor under this title ... solely because such ... debtor is ... a debtor under this title ... or ... [such debtor] has been insolvent ... during the case but before the debtor is granted or denied a discharge or [such debtor] has not paid a debt that is dischargeable in the case.

11 U.S.C. § 525(a) (1982 ed. & Supp. III 1986). In *Perez*, an uninsured driver sought bankruptcy relief from an auto accident judgment. Arizona law provided that a discharge in bankruptcy left unaffected a driver's obligation to satisfy an automobile accident judgment. Before debtor was granted a discharge, the state revoked his driver's license. The Supreme Court found the Arizona statute in conflict with the Bankruptcy Code's fresh start policy. The *Perez* court left unanswered the question whether "a State may require proof of financial responsibility as a precondition for granting driving privileges." 402 U.S. at 643–44, 91 S.Ct. at 1708–09, 29 L.Ed.2d at 238.

The Sixth Circuit interpreted 11 U.S.C. § 525(a) and addressed the question reserved in *Perez* in *Duffey v. Dollison*, 734 F.2d 265 (6th Cir.1984). The Ohio Financial Responsibility Act required all persons, including bankruptcy debtors, to submit proof of financial responsibility to reinstate a driver's license after an auto accident.

The *Duffey* court found that the Ohio scheme satisfied *Perez* because it applied to all individuals involved in automobile accidents, including debtors in bankruptcy, and thus was non-discriminatory in effect. The Sixth Circuit held that financial responsibility requirements do not violate § 525 "so long as they are not discriminatorily applied to bankrupts." 734 F.2d at 272–73. *See Holder v. Wisconsin Dep't of Transp.*, 40 B.R. 847 (Bankr.E.D.Wis.1984) (requiring proof of financial responsibility from bankruptcy debtors who discharge judgment and judgment debtors who satisfy judgment held non-discriminatory).

■ *Duffey* validates the provisions in TFRA for reinstatement of a debtor's driver's license. TENN.CODE ANN. § 55–12–108 imposes a $65 fee on all who seek license reinstatement after an accident. The $65 fee is not discriminatorily applied—a bankruptcy debtor who qualifies for reinstatement by scheduling the accident claim as a dischargeable debt is treated the same as a non-bankruptcy debtor who satisfies in some other way damages resulting from an accident. The "penalty" imposed by the State on those who lose their driver's license after an accident is imposed uniformly and without special effects on debtors in bankruptcy. These debtors' challenge to payment of the $65 fee for license reinstatement fails the *Duffey* test.

■ The provisions of TFRA permitting bankruptcy debtors to avoid license revocation in the first instance are not saved from conflict with § 525 by *Duffey*. Under TENN.CODE ANN. § 55–12–106(15), a debtor may avoid revocation by obtaining a discharge of all claims arising out of an accident, and paying a "$65 restoration fee." The subsection concerning debtors in bankruptcy is the only exception to revocation under § 55–12–106 that imposes the (anomalous) $65 "restoration fee." Section 55–12–106(15) was amended in 1986. The former subsection (15) read as follows:

> Any person who has obtained a discharge in bankruptcy that discharged all claims against the person because of the accident listed in the petition. If a true

copy of the discharge is submitted to the commissioner after the final date of revocation, it shall not relieve the person from the requirements of giving and maintaining proof of financial responsibility as required by § 55–12–126 and such person must pay a fifty dollar ($50.00) restoration fee and pass the driver license examination.

TENN.CODE ANN. § 55–12–106(15) (1980 & Supp.1986).

Under the former statute, a debtor in bankruptcy who acted timely could avoid license revocation without payment of a monetary "restoration fee." The $65 fee imposed on bankruptcy debtors by the 1986 amendments was not also imposed on others who avoid license revocation under the first 14 subsections of § 55–12–106.

There is no legislative history to illuminate the 1986 amendment of § 55–12–106(15). The legislative committee considering the 1986 amendments did address the benefit of having TFRA pay for itself. This purposes is stated in TFRA:

> Fees paid pursuant to this chapter shall be expendable receipts to be used only by the commissioner towards the cost of administering the provisions of this chapter.

TENN.CODE ANN. § 55–12–129 (1980 & Supp.1986). There is no legislative explanation why the $65 "restoration" fee was imposed upon pre-revocation bankruptcy debtors and not upon others eligible for avoidance of revocation. *Financial Responsibility Act: Hearing on H.R. 1172 Before the House Transportation Committee*, 94th General Assembly, 2d Sess. (Feb. 4, 1986).

Whether § 55–12–106(15) of TFRA is in conflict with 11 U.S.C. § 525(a) requires examination of the purpose and effect of the state act. *See Henry v. Heyison*, 4 B.R. 437 (E.D.Pa.1980); *Lee v. Board of Higher Education*, 1 B.R. 781 (S.D.N.Y. 1979); *Rutledge v. City of Shreveport*, 387 F.Supp. 1277 (W.D.La.1975); *Marine Elec. Ry. Prods. Div., Inc. v. New York City Transit Auth. (In re Marine Elec. Ry. Prods. Div., Inc.)*, 17 B.R. 845 (Bankr.E.D. N.Y.1982). That TFRA would be self-fund-

ing is laudable and not facially discriminatory within the meaning of 11 U.S.C. § 525(a). However, the effect of the 1986 amendment to § 55–12–106(15) is discriminatory against debtors in bankruptcy. Section 55–12–106(15) now penalizes individuals who are excepted from license revocation by reason of bankruptcy in contrast to all other similarly situated individuals. This is not the non-discriminatory application of a condition for licensing described in *Duffey*.

Debtor Norton attempted to avoid license revocation by satisfying all statutory conditions other than payment of the $65 fee. 11 U.S.C. § 525(a) invalidates that portion of TENN.CODE ANN. § 55–12–106(15) which required Norton to pay $65 to avoid license revocation.

## V.

■ Debtors' claim that revocation of their drivers' licenses after the filing of these bankruptcy cases violated the automatic stay is refuted by 11 U.S.C. § 362(b)(4) (1980 ed. & Supp. III 1986). The filing of a bankruptcy petition does not stay "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4) (1980 ed. & Supp. III 1986). Revocation of drivers' licenses by the Department under TFRA, absent proof of contrary purpose or effect, is enforcement of the State's regulatory power within the quoted exception to the automatic stay. *See Smith v. Pennsylvania Dep't of Transp.*, 58 B.R. 78, 80 (Bankr.E.D.Pa. 1986), *rev'd on other grounds*, 66 B.R. 244 (E.D.Pa.1986).

An appropriate order will be entered.

### ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that § 55–12–106(15) of the Tennessee Financial Responsibility Act discrim-

inates against debtors in bankruptcy in violation of 11 U.S.C. § 525(a).

IT IS SO ORDERED.