In re Kenny NORTON, et al., Debtors.

Kenny NORTON, Deborah L. Meece, Helen Reynolds, Thomas L. Hargrove, Dale Lavinia Davidson, David L. Adams, and Patricia A. Lewis, Plaintiffs–Appellees,

v.

TENNESSEE DEPARTMENT OF SAFETY, Defendant–Appellant.

No. 88–5309.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 8, 1988.

Decided Feb. 9, 1989.

Thomas F. Bloom argued, Rothschild & Lefkovitz, Nashville, Tenn., for Kenny Norton, et al.

W.J. Michael Cody, Atty. Gen., Raymond S. Leathers, William E. Young argued, Asst. Attys. Gen., Office of the Atty. Gen., Nashville, Tenn., for defendant-appellant.

Before WELLFORD and BOGGS, Circuit Judges; and SIMPSON *, District Judge.

WELLFORD, Circuit Judge.

This case involves the interesting question whether a provision of the Tennessee

---

* The Honorable Charles R. Simpson, III, United States District Court for the Western District of Kentucky, sitting by designation.

Financial Responsibility Act (TFRA) violates the anti-discrimination requirements of the Bankruptcy Code. The bankruptcy and district courts held that Tenn.Code Ann. § 55–12–106 discriminates against debtors in bankruptcy in violation of 11 U.S.C. § 525(a) because they determined that the statute's effect was to require only bankruptcy debtors to pay $65.00 in order to avoid driver's license revocation in Tennessee following an accident in which the driver at fault failed to demonstrate financial responsibility. We reverse.

Following an automobile accident occurring February 4, 1986, in which he was at fault, Kenny Norton filed a proceeding for Chapter 13 bankruptcy. On November 10, 1986, the Tennessee Department of Safety (the Department) informed Norton that it would revoke his license pursuant to TFRA. On December 1, 1986, Norton advised the Department that he had filed for bankruptcy the previous June. At the time of the bankruptcy court hearing on this matter, Norton had purchased automobile insurance and passed a new driver's license examination. He did *not* pay the $65.00 fee required to avoid revocation under § 55–12–106(15). This $65.00 fee is the focus of this dispute.[1]

Determining whether a state statute is in conflict with a federal statute involves a two step process. First, the court must construe the two statutes. Second, the court must determine whether there is a necessary conflict between the two. In making this decision, a reviewing court must determine whether a challenged state statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Perez v. Campbell,* 402 U.S. 637, 644, 649, 91 S.Ct. 1704, 1708, 1711, 29 L.Ed.2d 233 (1971); *Duffey v. Dollison,* 734 F.2d 265, 267–68 (6th Cir.1984).

Initially, it is important to understand how TFRA operates. TFRA is a means of encouraging Tennessee drivers to be financially responsible for damages caused by an automobile accident. If a driver is in an accident and there is a potentiality that he may be liable for more than $200 worth of damage, the driver must produce evidence of "financial security"—that he will pay for the damage—or his license will be revoked. Tenn.Code Ann. § 55–12–105.[2] The statute contains several exceptions to revocation, which is otherwise automatic upon a failure to show financial responsibility. Most of these exceptions relate either to making other arrangements for payment of any damages or to establishing non-responsibility for damages.[3] The statute provides an

---

**1.** Six other debtors also were involved in this action. They, unlike Norton, failed to notify the Department of their pending bankruptcy prior to the date the Department revoked their driver's licenses. They objected to the requirement that they pay $65.00 for their licenses' reinstatement under Tenn.Code Ann. §§ 55–12–108 and 55–12–118. The bankruptcy and district courts held that this requirement did not discriminate against bankruptcy debtors in violation of 11 U.S.C. § 525(a) because *all* persons whose license was revoked were required to pay $65.00 as a condition to license reinstatement. The court also held that the Department did not violate the § 525(a) automatic stay provision by revoking the debtors' driver's licenses while they were engaged in bankruptcy proceedings. *See Norton v. Tennessee Dept. of Safety,* 76 B.R. 624 (Bankr.M.D.Tenn.1987), *aff'd,* 84 B.R. 119 (M.D. Tenn.1988); 11 U.S.C. § 362(b)(4) (1980 ed. & Supp. III 1986). These holdings were not appealed and we do not address them; only the case of respondent Norton is before this court.

**2.** The statute lists the ways in which "financial security" may be shown:

The following and only the following shall be acceptable proof of financial security:
(1) Filing of written proof of insurance coverage with the commissioner on forms approved by the commissioner;
(2) The deposit of cash with the commissioner of no less than the amount specified in § 55–12–102, or in the total amount of all damages suffered, whichever is less, subject to minimum deposit of five hundred dollars ($500);
(3) The execution and filing of a bond with the commissioner of no less than the amount specified in § 55–12–102, or in the total amount of all damages suffered, whichever is less, subject to a minimum bond of five hundred dollars ($500); or
(4) the submission to the commissioner of notarized releases executed by all parties who had previously filed claims with the department as a result of the accident.
Tenn.Code Ann. § 55–12–105(b).

**3.** The exceptions are:
. . .—The requirements of security and revocation contained in the chapter shall not apply to:

exception for those in bankruptcy, so that the debtor's license will not be revoked. That exception provides:

Any person who has obtained a discharge in bankruptcy that discharged all claims against the person because of the accident listed in the petition; provided, however, that the discharge shall not relieve the person from the requirements of giving and maintaining proof of financial responsibility as required by § 55–12–126 and such person must pay a

restoration fee of sixty-five dollars ($65.00), and pass the driver's license examination.

Tenn.Code Ann. § 55–12–106(15). One of these exceptions must be fulfilled or demonstrated to the Department sometime before the date revocation becomes effective.[4]

If the party so notified fails to respond to the Department, the driver's license is revoked and the driver may apply for reinstatement once the accident debt is satisfied. Discharge in bankruptcy may bring

(1) An operator or owner if such owner had in effect at the time of the accident an automobile liability policy or bond with respect to the vehicle involved in the accident, except that an operator shall not be exempt under this subdivision if at the time of the accident the vehicle was being operated without the owner's permission, either expressed or implied;

(2) An operator who is not the owner of the vehicle involved in the accident if there was in effect at the time of the accident an automobile liability policy or bond with respect to his driving a vehicle not owned by him;

(3) An operator or owner whose liability for damages resulting from the accident is, in the judgment of the commissioner, covered by another form of liability insurance policy or bond;

(4) Any owner qualifying as self-insurer or to any operator of a vehicle owned by a person qualifying as a self-insurer as outlined in § 55–12–111;

(5) Any operator or owner of a motor vehicle involved in an accident wherein no injury or damage was caused to the person or property of anyone other than such operator or owner;

(6) An owner of a motor vehicle if at the time of the accident the vehicle was being operated without his permission, either expressed or implied, or was parked by a person who had been operating such motor vehicle without such permission;

(7) Any owner or operator who shall submit on or before the date of revocation proof satisfactory to the commissioner that he has accepted liability for the accident and has entered into an agreement concerning the payment of their damages satisfactory to all parties claiming damages. This exemption shall not apply, however, if such owner or operator shall fail to carry out the terms of the agreement. The commissioner may at any time within three (3) years after the accident, upon notice of such failure, take any action that he might have taken had such agreement not been made;

(8) Vehicles owned by the United States, this state or any political subdivision of this state or any municipality therein; or to the

operator of any such vehicle so owned, when such vehicle is involved in an accident;

(9) Any vehicle owned and operated by a carrier subject to the jurisdiction of the public service commission of Tennessee or the interstate commerce commission;

(10) Any person licensed and engaged in the business of renting or leasing motor vehicles to be operated on the public highways shall be required only to furnish proof of financial ability to satisfy any judgment or judgments rendered against such person in his capacity as owner of the motor vehicle, and shall not be required to furnish proof of its financial ability to satisfy any judgment or judgments rendered against the person to whom the motor vehicle was rented or leased at the time of the accident;

(11) A driver or owner of a vehicle which at the time of the accident was parked, unless such vehicle was parked at a place where parking at the time of the accident was prohibited by any applicable law or ordinance, or unless the vehicle was parked in an otherwise unlawful manner;

(12) Any person employed by the government of the United States, while such person is acting within the scope of his office or employment and is involved in a motor vehicle accident;

(13) An owner or operator of any vehicle where there is no physical contact with another vehicle or object or person unless a judgment has been obtained;

(14) A driver or owner of a vehicle who has submitted to the commissioner on or before the date of revocation notarized releases executed by all parties who have previously filed claims with the department as a result of the accident;

Tenn.Code Ann. § 55–12–106.

**4.** The Department must notify the driver that his license will be revoked. A notification must be sent at least twenty days prior to the date the revocation becomes effective. Tenn.Code Ann. § 55–12–105(c).

about a satisfaction.[5] Any license that is revoked because of failure to satisfy an accident-related debt may be reinstated after the debt is discharged or arranged to be paid and after the driver has passed a new test and pays a $65.00 fee. Tenn.Code Ann. §§ 55–12–108, 55–12–118.

The Tennessee law is described as adopting a "one-bite" policy. Under that policy, a Tennessee motorist is permitted to drive without insurance until he is responsible for damages caused in one accident in which he does not pay within sixty days of judgment. In order to regain his driving privileges, he must be discharged from the first debt, purchase insurance, pass a test, and pay $65.00. A debtor in bankruptcy is given a special bonus: even though he has used his "one-bite," he does not have to wait until his license is revoked for the Department to anticipate the discharge in bankruptcy in order to maintain driving privileges.

Having interpreted the Tennessee law, we must ascertain the construction of the relevant provision of the Bankruptcy Code. Section 525(a) of the Bankruptcy Code protects a person who has been a debtor under the Code or a bankrupt or debtor under the prior Bankruptcy Act from discriminatory treatment by a governmental unit.[6] This section, which is a codification of *Perez*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), is designed to prevent governmental units from frustrating the fresh start policy of the Code by discriminating against persons who have been debtors under the Code or the prior Bankruptcy Act. This court concluded that "section 525 is intended to ensure that bankrupts are not deprived of a 'fresh start' because of governmental discrimination against them, based 'solely' on the bankruptcy." *Duffey v. Dollison*, 734 F.2d 265, 271 (6th Cir.1984). Section 525 " 'prevent[s] the government either from denying privileges to individuals solely as a reaction to their filing bankruptcy or from conditioning the grant of privileges on the bankrupt's reaffirmation of certain debts.' " *Duffey*, 734 F.2d at 271 (quoting district court).

■ The bankruptcy and district courts held that TFRA, as applied to Norton, violated § 525(a) of the Bankruptcy Code. After reviewing the facts and the two statutes, we disagree. Although § 525(a) prohibits the state from penalizing those who choose the protection bankruptcy offers and the benefits of its "fresh start" policy, it does not require the state to ignore the prior existence of a bank-

---

5. According to Tennessee officials, this bankruptcy exception is not applied literally; *actual discharge* in bankruptcy is not required in the case of a Chapter 13 debtor in order to qualify for the exception under Tenn.Code Ann. §§ 55–12–106(15). In the case of a Chapter 13 debtor, bankruptcy law would indicate that the debt would be discharged upon completion of the payment schedule. *See* 11 U.S.C. § 1328. The state anticipates the discharge, however, when the debtor enters bankruptcy and presents a plan. *See* Original Record on Appeal, Memorandum of Law in Support of Plaintiff–Debtors Motion for Summary Judgment, Exhibit 1, at 2, (Letter of Nov. 24, 1986 from J. Young to E. Rothschild). In the view of several bankruptcy courts, § 525 may require such a liberal construction. *See Briner v. Charnes*, 10 B.R. 850, 852–53 (Bankr.D.Colo.1981); *In re Heath*, 3 B.R. 351, 353–54 (Bankr.N.D.Ill.1980).

6. 11 U.S.C. § 525 provides:
    Except as provided in Perishable Agricultural Commodities Act 1930 (7 U.S.C. 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. 181–229), and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

rupt's debt in all circumstances.[7] In *Duffey*, we held that the Ohio Financial Responsibility Act (OFRA) did not interfere with § 525(a). OFRA recognized the debt's discharge through bankruptcy, but it required a showing of future financial responsibility in order to reinstate driving privileges. *Duffey*, 734 F.2d at 274. We held that OFRA did not discriminate because it applied the same conditions to all debtors who failed to satisfy a driving-related debt. It was for this reason that the bankruptcy and district courts held in the instant case that the $65.00 restoration fee, as applied to those who let their licenses be revoked, did not discriminate against those in bankruptcy. *Norton*, 76 B.R. at 630 (stating *Duffey* validates the provisions in TFRA for reinstatement of a debtor's driver's license).

The bankruptcy and district courts, however, found that the requirement that the bankrupt debtor attempting to avoid a revocation, pay a $65.00 fee in addition to demonstrating financial responsibility and passing a test discriminated against the debtor. The courts stated that only the bankruptcy debtor attempting to avoid revocation must pay a restoration fee. *Norton*, 76 B.R. at 627. The court stated that

"[T]here is no legislative explanation why the $65 restoration fee was imposed upon pre-revocation bankruptcy debtors and not upon others eligible for avoidance of revocation." *Norton*, 76 B.R. at 631.

We believe that in reaching this result, these courts failed to examine the exception in the context of the entire statutory scheme. *See Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (stating that when interpreting a statute, courts must look to provisions of whole law, and to its object and policy, rather than at a single sentence or member of a sentence); *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986). Every driver in Tennessee found to be financially irresponsible must pay $65.00, maintain insurance, and pass a new driver's test.[8] The Tennessee legislature recognized the plight of those in bankruptcy and provided an expedited means in which a bankrupt could avoid revocation even before the debt is actually discharged in bankruptcy. TFRA did not deprive *Norton* of a "fresh start;" rather, we agree with the position of appellant that it actually afforded him a "head start."[9] Examining the Tennessee

---

**7.** The legislative history specifically stresses this point. For example, House Report No. 595 states:

[T]he prohibition [of section 525] *does not extend so far as to prohibit examination of the factors surrounding bankruptcy, the imposition of financial responsibility rules if they are not imposed only on former bankrupts,* or the examination of prospective financial condition or managerial ability.... [I]n those cases where the causes of a bankruptcy are intimately connected with the license, grant, or employment in question, an examination into the circumstances surrounding the bankruptcy will permit governmental units to pursue *appropriate regulatory policies and take appropriate action without running afoul of* bankruptcy policy.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 165 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6126 (emphasis added). *See also Duffey*, 734 F.2d at 273 (discussing § 525's legislative history).

**8.** The Department explains that proceeds from the $65.00 fee pay for the administration of the program. Tenn.Code Ann. § 55–12–129 (Supp. 1988). It is certainly within the legislature's discretion to shift the cost of the program to

those drivers who make such a program necessary. *Cf. City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 446–47, 105 S.Ct. 3249, 3255, 3258, 87 L.Ed.2d 313 (1985). We find no merit in respondent's contentions that the Chapter 13 debtor is unable to pay the fee and therefore it discriminates against him, and, as a matter of policy, a mandatory insurance program should be the more appropriate approach to the state's concerns. We view the $65.00 fee as simply an additional criterion applied uniformly to those whose licenses were, or could be, revoked for failure to pay an accident-related debt.

**9.** The Department automatically revokes the license of any person who fails to pay accident damages for which he was responsible. If a license is revoked, the holder cannot regain driving privileges until the debt is discharged and the other requirements are met. A driver—the bankrupt and non-bankrupt alike—may avoid revocation by showing either that the driver has made arrangements to pay the debt, that the driver was not at fault, or that someone else is responsible for paying the debt—in essence, demonstrate that he has not used his "one-bite."

**318**

Act's structure, "the statute applies without exception to *any* person who fails to satisfy a judgment for whatever reason whether because of unwillingness, inadvertence, or inability to pay." *Duffey*, 734 F.2d at 273. In summary, we hold that TFRA, as it applies to Norton, does not violate § 525 of the Bankruptcy Code. We accordingly REVERSE the judgment of the district court.[10]

In addition, someone who is in bankruptcy may avoid revocation by meeting the same requirements as someone whose license has been revoked because of financial irresponsibility and whose debt has subsequently been discharged. Norton, whose debt was not yet discharged, sought to simply avoid revocation by maintaining insurance and passing a test without paying $65.00. Norton asks the court to strike this requirement from the statute. Norton does not ask us to strike the whole exception, however, because then he would not be able to avoid revocation and he would be in the same situation as the six other debtors in the original suit. We conclude that TFRA's exception, taken as a whole, complements, rather than frustrates, the letter and intent of § 525(a) of the Bankruptcy Code.

10. We do not address in this case whether a bankruptcy debtor, who had confirmed a 100% plan under Chapter 13, may qualify for an exemption under Tenn.Code Ann. § 55–12–106 (7). In addition, we do not address the application of TFRA if the bankruptcy discharge occurred prior to the license revocation.