600 A.2d 237

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

v.

**Sheldon Dwane THOMAS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 28, 1990.

Decided Nov. 22, 1991.

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellant.

Peter M. Suwak, for appellee.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge.

This case presents a question of first impression in Pennsylvania: whether enforcement of section 1785 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1785,[1] which provides for suspension of operating privileges of uninsured owners, is preempted by the Bankruptcy Code's anti-discrimination provisions, 11 U.S.C. § 525.[2] Because we find no conflict between our statute and the Bankruptcy Code, we hold that a licensed driver's filing for relief under the Bankruptcy Code does not relieve the owner of the obligation to prove financial responsibility under the circumstances required by Pennsylvania law.

The facts are not in dispute. Appellee Thomas was employed as a part-time bus/cab driver. On March 3, 1986, Thomas filed for relief in the nature of a "wage earner's" plan under Chapter 13 of the Bankruptcy Code.[3] In Octo-

1. 75 Pa.C.S. § 1785 provides:
 If the department determines that the owner of a motor vehicle involved in an accident requiring notice to a police department pursuant to section 3746 ... did not maintain financial responsibility on the motor vehicle at the time of the accident, the department shall suspend the operating privilege of the owner, where applicable, and the department shall revoke the registration of the vehicle.

2. 11 U.S.C. § 525 provides:
 [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act ... *solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge,* or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act. (Emphasis Added).

3. 11 U.S.C. §§ 1301–1330. Chapter 13 of the Bankruptcy Code emphasizes rehabilitation of the debtor rather than liquidation. Under Chapter 13, the debtor enters into a repayment plan with the approval

ber 1987, while under a "wage earner's" plan, he allowed his automobile insurance to lapse.

On July 19, 1989, Thomas, while driving his own car on personal business, was involved in an accident, but did not maintain insurance or other financial responsibility as required by 75 Pa.C.S. § 1785. DOT suspended Thomas' operating privilege for three months pursuant to section 1785.

■ Thomas appealed the suspension to the trial court, arguing that 11 U.S.C. § 525 prevents suspension of his operating privilege. Thomas asserted that the suspension would frustrate his Chapter 13 plan because he depends on his driver's license for continued employment. The trial court agreed with Thomas and DOT appealed. Our review is limited to determining whether the trial court erred as a matter of law in holding that enforcement of the Motor Vehicle Financial Responsibility Law is preempted by the Bankruptcy Code's anti-discrimination provisions in 11 U.S.C. § 525.[4]

Congress intended in 11 U.S.C. § 525 to prevent discrimination against a person for seeking protection under the bankruptcy laws. The legislative history of section 525 indicates that the section was designed to codify the United States Supreme Court's decision in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Sen.Rep. No. 989, 95th Cong., 2nd Sess. 81, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5867. In *Perez*, the Supreme

of his creditors. The creditor looks to the future earnings of the debtor for satisfaction of debts, rather than the assets of the debtor.

4. In order to determine whether federal law preempts a state statute, we look to the intent of congress. "Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *FMC Corporation v. Holliday,* — U.S. —, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (quoting *Shaw v. Delta Air Lines Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490 (1983), in turn quoting *Fidelity Federal Savings & Loan Assn. v. De la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982), which in turn quotes *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)).

Court held that a state financial responsibility law which conditioned reinstatement of a driver's license after an accident on repayment of a tort judgment, despite discharge of that debt in bankruptcy, unconstitutionally conflicted with the fresh start policy of federal bankruptcy law. *Id.* at 652, 654, 91 S.Ct. at 1712, 1713.

State law may not make a discriminatory distinction based exclusively on the existence of a debt in bankruptcy. *In re Layfield,* 12 B.R. 846 (Bankr.N.D.Ala.1981). Section 525 of the Bankruptcy Code does not automatically preempt state financial responsibility laws. The state may look into circumstances surrounding the bankruptcy and take appropriate action so long as the action is not based solely on the bankrupt status of the debtor. H.R.Rep. No. 595, 95th Cong., 1st Sess. 165, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6126.

In holding that the Bankruptcy Code preempted Pennsylvania's Motor Vehicle Financial Responsibility Law, the trial court relied on the interpretation of 11 U.S.C. § 525 in *In re Briner,* 10 B.R. 850 (Bankr.D.Colo.1981), which held that Colorado's financial responsibility law violated the Bankruptcy Code. The Colorado law required uninsured motorists to post a bond or obtain a financial release from the victim after an accident, without which the motorist's license would be suspended.

In *Briner,* the uninsured motorist was involved in an automobile accident. The motorist, unable to post bond or obtain a financial release from the victim, lost his license. Soon thereafter, he filed for bankruptcy under Chapter 13. The motorist's work required that he possess a valid driver's license. If he lost his job, the motorist could not meet his Chapter 13 obligations, repay the victim, and eventually discharge the bankruptcy proceedings. Yet, Colorado's law provided that without a discharge in bankruptcy, the motorist could not have his license reinstated.

The bankruptcy court held that Colorado's law violated 11 U.S.C. § 525. Under Briner's wage earner's plan, his debt

would be discharged in approximately three years. Colorado argued that under its statute, the state must suspend Briner's license for the statutory one-year period unless Briner's debt is discharged prior to that time. The state also insisted that its suspension of Briner's license was not solely based on his failure to pay a dischargeable debt. However, the court noted that Briner had obtained insurance (his only other statutory obligation) and that "the only ground of the State's present insistence upon suspension is the failure to pay the liability from the accident." *Id.* at 853. The court held that suspension of Briner's license by the state for failure to pay the debt to be discharged would remove the sole means of funding Briner's wage earner's plan, the precise situation 11 U.S.C. § 525 was designed to remedy.

In the present situation, the trial court's reliance upon *Briner* is misplaced. Here, Thomas filed for Chapter 13 protection *before* the accident to satisfy other financial obligations. His bankrupt status at the time of the accident was merely coincidental. In *Briner*, the motorist filed for bankruptcy to obtain relief from the judgment which the Colorado authorities attempted to use as the basis for the suspension *after* the accident. Furthermore, DOT is not attempting to suspend Thomas' license for failure to pay a debt to be discharged in the bankruptcy proceedings,[5] but for failure to maintain insurance, a statutory obligation not affected by a discharge in bankruptcy.

■ Motor vehicle financial responsibility statutes are not discriminatory per se. *In re Graham*, 85 B.R. 713 (Bankr.D.N.J.1988). They are valid so long as the law applies to all motorists regardless of their financial status. *Duffey v. Dollison*, 734 F.2d 265 (6th Cir.1984). Even statutes requiring only judgment debtors to provide proof of future financial responsibility do not violate 11 U.S.C. § 525 so long as the requirement is applied equally to all

5. In other words, this is not a suspension pursuant to the provisions of 75 Pa.C.S. §§ 1771 *et seq.*, which provide for suspension of operating privileges because of an unsatisfied judgment.

judgment debtors. *Matter of Holder*, 40 B.R. 847 (Bankr. E.D.Wis.1984).

Section 1785 of Pennsylvania's Motor Vehicle Responsibility Law requires DOT to suspend the operating privilege of *any* vehicle owner who does not have proof of financial responsibility at the time of a "reportable accident." [6] "The purpose of the statute is to require owners of motor vehicles to maintain liability insurance for their vehicle at all times." *Department of Transportation v. Portella*, 116 Pa.Commonwealth Ct. 135, 138, 541 A.2d 59, 60 (1988).[7]

■ A court may not ignore this purpose and allow a vehicle owner to escape the penalty for failing to maintain insurance. *Id.* Suspension is mandatory even where unfairness to the party or inequity may result. *Department of Transportation v. Ratliff*, 114 Pa.Commonwealth Ct. 121, 538 A.2d 599 (1988).[8]

■ The trial court emphasized that Thomas could not meet his Chapter 13 repayment plan without his driver's license. However, the "fact that a particular state law may totally frustrate the debtor's reorganization is irrelevant, providing the law in question is one of general applicabili-

6. An accident must be reported to the police if it involves injury or death of any person or if the vehicle cannot be driven from the scene. 75 Pa.C.S. § 3746.

7. Recent amendments to the Vehicle Code reflect the strong public policy in favor of requiring insurance or equivalent financial responsibility for motor vehicles. The law now requires self-certification of financial responsibility in the registration application for a vehicle. 75 Pa.C.S. § 1305(d). Registration is denied if the self-certification does not accompany the registration application, 75 Pa.C.S. § 1306(7), and DOT's agent must verify financial responsibility before the registration is issued. 75 Pa.C.S. § 1318(a). A motor vehicle inspection certificate may not be issued without proof of insurance or other financial responsibility. 75 Pa.C.S. § 4727(d).

8. In *Ratliff*, we expressly rejected the trial court's conclusion that suspension under § 1785 would be:
 grossly unfair and a misapplication of the intended provisions of the statute, especially in light of the fact that the appellant has assumed financial responsibility for the accident, the fact that the statute had only been in effect for three days at the time of the accident, and lastly, the fact that the appellant has obtained insurance and financial responsibility after the accident.

ty[.]" *In re Graham*, 85 B.R. at 717. *See also Matter of Holder*, 40 B.R. at 848 n. 2. In this case, 11 U.S.C. § 525 and Thomas' inability to meet his Chapter 13 repayment obligation do not require preemption of the financial responsibility law.

Although the effect of license suspension is harsh, the statute does not treat debtors unfairly.[9] Section 1785 of the Motor Vehicle Financial Responsibility Law carries the same penalty regardless of the violator's financial status. As with a solvent violator, Thomas could have avoided the effects of the statute 1785 either by purchasing insurance or by not driving his uninsured car.

 Filing for bankruptcy relief does not confer a license to drive in this Commonwealth without adequate insurance. The trial court erred in so holding. We hold that enforcement of section 1785 of the Motor Vehicle Financial Responsibility Law does not violate the anti-discrimination provisions of the Bankruptcy Code and reverse the order of the trial court.

## ORDER

We reverse the order of the Court of Common Pleas of Washington County and reinstate the suspension of appellee's operating privileges.

9. We note that Thomas at least should have known of the harsh penalty for driving in violation of 75 Pa.C.S. § 1785. We take notice of the fact that in order to register his vehicle, he was required to sign a form acknowledging his awareness of the penalty for failure to maintain financial responsibility on his vehicle. 75 Pa.C.S. § 1781.