In re Robert G. **GRAHAM** and Dorothy A. Graham, Debtors.

STATE OF NEW JERSEY, DIVISION OF MOTOR VEHICLES, Plaintiff,

v.

Robert G. **GRAHAM** and Dorothy A. Graham, Defendants–Debtors.

Bankruptcy No. 86–02180.
Adv. No. 86–0326TG.

United States Bankruptcy Court, D. New Jersey.

April 29, 1988.

---

W. Cary Edwards, Atty. Gen. of State of N.J. by Louis T. DeLucia, Deputy Atty. Gen., Trenton, N.J., for the State of New Jersey.

Michael H. Gottesman, Asbury Park, N.J., for debtors.

**WILLIAM H. GINDIN, Bankruptcy Judge.**

This matter is before the court on a notice of motion for summary judgment brought by the State of New Jersey, Division of Motor Vehicles, to determine the dischargeability of an insurance surcharge. The New Jersey Merit Rating Plan insurance surcharge, *N.J.S.A.* 17:29A–35(b)(2), is levied as a result of a conviction for driving while intoxicated, and provides for payments of not less than $1,000.00 annually for three years to be added to an individual's automobile insurance premium. This is a condition precedent to holding a valid New Jersey drivers license.

The facts are not in dispute. On October 11, 1985, defendant-debtor, Robert G. Graham, was convicted of operating a motor vehicle while under the influence of alcohol in violation of *N.J.S.A.* 39:4–50. On April 10, 1986, the debtors, Robert G. Graham and Dorothy A. Graham, filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The debtors listed a $2,000.00 Merit Rating Plan debt in their schedules. On July 17, 1986, the State of New Jersey brought the within action to determine the discharge-

ability of the imposed Merit Rating Plan surcharge under 11 U.S.C. § 727.

No allegations are asserted against debtor Dorothy A. Graham, and the issue was neither briefed nor argued as to her.

The first issue to be dealt with here is a simple one: whether or not summary judgment may be granted. F.R.C.P. 56 provides for the entry of summary judgment if:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

While there are limitations concerning the entry of summary judgment, such a judgment should be entered cautiously, and with due regard to the rights of those against whom no factual defenses have been raised. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The purpose of the rule is to eliminate a trial in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson Co.,* 534 F.2d 566, 573 (3rd Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). *See also, Judson v. Peoples Bank & Trust Co. of Westfield,* 17 N.J. 67, 110 A.2d 24 (1954). Thus, since there are no genuine issues of material fact, the within case may be disposed of by summary judgment.

The basis upon which the State asserts the non-dischargeability of the surcharge is *N.J.S.A.* 17:29A–35(b)(2):

> Plan surcharges shall be levied for convictions (a) under R.S. 39:4–50 for violations occurring on or after February 10, 1983 ... Surcharges under this paragraph shall be levied annually for a three year period, and shall be not less than $1,000.00 per year ...

The calculation of the surcharge is made pursuant to *N.J.S.A.* 17:29A–35(d):

> The dollar amount of all motor vehicle conviction surcharges shall be at least equivalent to the differential between the

rates charged to insureds as promulgated by the rating bureau which files rates for the greatest number of insurers in the voluntary private passenger automobile insurance market in this State and the Supplement I rates in use as of December 31, 1982 by the automobile insurance plan established pursuant to P.L.1970, c. 215 (C. 17:29D–1), and the amount collectible under the motor vehicle conviction surcharge system in use by the automobile insurance plan established pursuant to P.L.1970, c. 215 (C. 17:29D–1 et seq.) ...

The statute provides that the monies collected shall be dispersed 80% to the New Jersey Automobile Full Insurance Underwriting Association and 20% to the State for administrative expenses.

The failure of any motorist to pay the surcharge will result in the suspension of the driver's license of that motorist, such suspension to remain in effect until the surcharge is paid. A showing of indigency permits the motorist to pay the surcharge in installments.

In order to analyze the consequences of the surcharge, it is first necessary to determine its character. In *Clark v. New Jersey Div. of Motor Vehicles*, 211 N.J.Super. 708, 512 A.2d 588 (App.Div.1986) Judge Gruccio affirmed an administrative law judge's determination applying the surcharge. The Appellate Division determined that the surcharge did not violate the constitutional prohibition against *ex post facto* laws. The surcharge is a civil penalty which considers a licensee's "driving history and sets qualifications for the offender's continued driving on the highway." *Id.* at 711, 512 A.2d 588. More importantly, for purposes of the contentions in the within matter, the calculation itself is simply a part of rate-making within the framework of the insurance system. The plan, according to Judge Gruccio, is not "punitive", but rather "remedial and civil".

The next question is whether or not the surcharge is a debt which is encompassed by the general grant of a discharge under 11 U.S.C. § 727(b). A debt is defined in 11 U.S.C. § 101(11) as a "liability on a claim". A claim is defined by 11 U.S.C. § 101(4) as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured ...

Whether or not the State of New Jersey, Division of Motor Vehicles has a "right to payment" is dependent upon state law. Justice Black clarified this analysis in *Vanston Bond Holders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) by determining that state law must be used to decide the question of whether or not a claim exists. Once the existence of the claim is established, questions concerning its allowability become matters for determination under the federal law of bankruptcy. *Id.* at 162, 67 S.Ct. at 239. *See generally, Erie Railroad Company Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The statutory scheme of *N.J.S.A.* 17:29A–35 (as amended) sets forth a formula pursuant to which the surcharged individual must pay for insurance. Implementation and collection by the Division of Motor Vehicles is simply the method chosen by the legislature to ensure that the payment is made by persons required to pay the surcharge. Section § 727(b) of the Bankruptcy Code addresses only debts arising prior to the order for relief. The payment due in the instant case is part of a statutory scheme for the establishment of appropriate insurance premiums. *N.J.S.A.* 17:29A–33 *et seq.*

The laws of the State of New Jersey require that all drivers demonstrate that the vehicle being operated is covered by liability insurance: *N.J.S.A.* 39:3–29. Failure to evidence such insurance results in the suspension of a driver's license until such time as insurance is obtained. As stated previously, the imposition of the surcharge results in payment of a portion of the premium under the statute, where 80% of the surcharge is remitted to the New Jersey Automobile Full Insurance Underwriting Association and 20% is retained for

**716**

administrative expenses by the Division of Motor Vehicles. Thus, by its description, the surcharge is simply an additional premium payable for the necessary insurance.[1]

The concept of using prior experience in order to establish future premiums is one which has been accepted by this court. In *In re Primrose Bedspread Corp.*, 67 B.R. 659 (Bankr.D.N.J.1986) it was held that the uniform application of past experience was an appropriate measure of future premiums. "[E]xperience ... [may be used] ... in calculating the experience rating of the debtors and the subsequent premiums owed ...". *In re A.C. Williams Co.*, 51 B.R. 496, 497 (Bankr.N.D.Ohio 1985). An additional premium based upon the specific statistics of drivers who are guilty of driving while intoxicated, or who failed to take a breathalyzer test, or who have accumulated a large number of points, is no different than adjusting premiums based upon the age of the driver or the geographic location of the motor vehicle. Such distinctions historically have been considered appropriate in the assessment of insurance premiums and the establishment of appropriate rates. *N.J.S.A.* 17:29A–4. *See also, Coro Brokerage, Inc. v. Rickard,* 29 N.J. 295, 148 A.2d 817 (1959).

Thus, since there is no pre-petition "right to payment" no matter how incomplete same may be, there can be no debt dischargeable under 11 U.S.C. § 727.

█ It is urged by the debtor that failure to permit the discharge of the Merit Rating Plan surcharge would result in a violation of 11 U.S.C. § 525, which prohibits a governmental unit from discriminating against a person who is or has been a debtor "solely because such bankrupt or debtor is or has been a debtor" by taking any action to "deny, revoke, suspend, or refuse to renew a license ...". The purpose of the section is to codify the holding in *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). (*See* H.R.Rep. No. 95–595, 95th Cong., First Sess. 366–67 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6321, 6322;

S.Rep. No. 95–989, 95th Cong., Second Sess. 81 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5867.) In *Perez,* the Supreme Court addressed the propriety of Arizona's Financial Responsibility Law. The debtor therein had been involved in an automobile accident resulting in a tort judgment against him. The judgment had not been paid, and subsequently, the debtor's driver's license was revoked. The debt was thereafter discharged in the debtor's bankruptcy proceeding. Although the debtor no longer owed the judgment, the state refused to reissue his license. The court held that the debtor had an absolute right to a fresh start which would "include freedom from most kinds of preexisting tort judgments." *Id.* at 648. The concept of the fresh start has long been a component of bankruptcy law and Congress intended that debtors shall have "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discourgement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934). The Arizona law operating in *Perez* frustrated that basic right.

█ A motor vehicle financial responsibility law is not, however, discriminatory *per se.* In *Duffey v. Dollison,* 734 F.2d. 265 (6th Cir.1984), the court was called upon to consider a law which required that one who had been convicted of a serious motor vehicle violation be required to maintain appropriate automobile insurance or otherwise furnish proof of financial responsibility. Failure to do so resulted in the suspension of the motorist's driving privileges. Circuit Judge Engle reasoned that the law was written to apply to all motorists "across the board", whether they were involved in bankruptcy proceedings or not. Restoration occured upon the satisfaction of the judgment or the expiration of seven years and in either instance, upon a showing proof of *future* financial responsibility. *Perez* was distinguised in *Duffey* by reference to a statement therein where the Su-

---

**1.** One could liken this to the payment of a premium to an insurance agent who retains his

commission and remits the balance of the premium to the insurer.

preme Court pointed out that the Arizona statute specifically provided that a discharge in bankruptcy would not operate to relieve the judgment debtor from any of the requirements of the Arizona statute. *See* 402 U.S. at 642, 91 S.Ct. at 1707. In the instant case, the applicable insurance law, *N.J.S.A.* 17:29A–35, makes no reference whatsoever to the bankruptcy situation, but rather, applies equally to anyone found guilty of specific violations of the motor vehicle laws. A careful reading of 11 U.S.C. § 525 reminds us that the prohibition is against the denial of the license *"solely* because such bankrupt or debtor is or has been a debtor under this title" (emphasis added). Clearly, as the holding in *Duffey* points out, § 525 is not violated because the surcharge applies *in futuram* to all drivers whether they have been debtors in the bankruptcy court or not.

To permit this future expense to be discharged would, in fact, result in some kind of reverse discrimination, for clearly the motorist convicted of the offense of driving while intoxicated who later files a petition in bankruptcy would have a significant advantage over all others in the insurance pool. This would force a violation of the state prohibition against discriminatory rates. Nothing in the Bankruptcy Code suggests that it should be used solely for the purpose of frustrating state motor vehicle laws.

One must view the entire policy issue in perspective. The fact that a particular state law may totally frustrate the debtors reorganization is irrelevant, providing the law in question is one of general applicability and does not violate the policy of the bankruptcy code. *See Matter of Holder,* 40 B.R. 847, 848 N. 2 (Bankr.E.D.Wisc. 1984). The public policy grounded in the rate making procedures which differentiates between good drivers and bad drivers, has no discriminatory effect on debtors; it simply requires them to pay their future bills at the same reasonable rate that a non-debtor must pay. A discharge in bankruptcy of this debt would be the equivalent of passing a law entitling those who have received discharges in bankruptcy to purchase their groceries at half price for three years. Such a result is obviously unacceptable. *See In re Flick,* 5 B.R. 637 (Bankr.E.D.Pa., 1980); *In re Primrose Bedspread Corp., supra.*

Since the entire surcharge in the instant case was prospective and intended to go into effect subsequent to the filing of the petition, the claimed charge is not dischargeable.

The State of New Jersey, Division of Motor Vehicles is entitled to a judgment declaring the debt non-dischargeable against Robert G. Graham. The case as it applies to defendant-debtor Dorothy A. Graham is dismissed. The deputy attorney general is directed to present an order consistent with this opinion.