**In re Robert E. BILL and Mary S. Bill, a/k/a Sherry Bill, Debtors.**

**Bankruptcy No. 87–06533.**

United States Bankruptcy Court, D. New Jersey.

Sept. 22, 1988.

Thomas J. Orr, Colaguori & Orr, Burlington, N.J., for debtors.

Louis T. DeLucia, W. Cary Edwards, Atty. Gen. of New Jersey, Trenton, N.J., for State of N.J., Div. of Motor Vehicles.

Neil J. Fogarty, Hudson County Legal Services, Jersey City, N.J., amicus curiae.

Peter J. Broege, Wood & Broege, Manasquan, N.J., for trustee.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This opinion shall address the objection of the State of New Jersey, Division of Motor Vehicles ("DMV") to confirmation of the debtors' plan for adjustment of their debts under Chapter 13 of Title 11, United States Code ("Bankruptcy Code" or "Code"). The debtors' plan proposes payment of surcharges imposed on debtor Robert E. Bill ("Bill" or "debtor") under N.J.S.A. 17:29A–35 (West 1985) (the "Merit Rating Plan") as a result of his convictions for refusal to submit to a chemical test and for operating a motor vehicle while his driver's license was suspended. The DMV objected to confirmation on the basis of the argument that Merit Rating Plan surcharges are not "debts," and that the debtors' plan therefore cannot affect the surcharges.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). A party in interest has the right under Code § 1324 to object to confirmation of a Chapter 13 plan. Such an objection creates a contested matter which is governed procedurally by Bankruptcy Rules 3020(b) and 9014.

## FINDINGS OF FACT

The facts are not disputed. On April 19, 1985 Bill was convicted of reckless driving in violation of N.J.S.A. 39:4–96 (West Supp. 1988) and of refusal to submit to a breathalyzer test in violation of N.J.S.A. 39:4–50.4a (West Supp.1988). On June 9, 1985, Bill was again convicted of the same two offenses as the result of a different incident involving an automobile accident. Bill's driver's license was suspended as a result of his convictions for refusing to take a breathalyzer test. Then on August 17, 1985 and October 11, 1985 Bill was also convicted of operating a motor vehicle while his license was suspended in violation of N.J.S.A. 39:3–40 (West Supp.1988).

Bill's convictions for refusing to submit to a breathalyzer test and driving while suspended resulted in the imposition of surcharges upon him under N.J.S.A. 17:29A–35(b)(2), a section of the Merit Rating Plan. The surcharges imposed for refusing to submit to a breathalyzer were $2,000 for each of the years 1986, 1987 and 1988. The surcharges for driving while suspended were $1,000 for 1986 and $500 for 1987. Thus the total surcharges imposed on Bill were $7,500.

Bill satisfied all conditions of his sentences for the convictions in question, and on August 11, 1987 the DMV restored his driving privileges. However, Bill fialed to pay the initial installments of the surcharges when due. The DMV then suspended his driving privileges again on September 18, 1987 and December 11, 1987, solely because of his failure to pay the surcharges.

On October 27, 1987 Bill and his wife filed a petition under Chapter 13 of the Bankruptcy Code, which provides for adjustment of debts of individuals with regular income. The State of New Jersey was listed as holding an unsecured claim of $2,500 for the surcharges, which is the amount of the surcharge installments which Bill believed to be due at that point. The original plan which the debtors filed proposed to pay the DMV only that amount. However, the debtors then filed a modified plan providing for payment of the entire $7,500 in surcharges over a period of 54 months. On February 9, 1988, at Bill's request, the DMV temporarily reinstated his license pending the Court's decision in this matter.

The hearing on confirmation of the modified plan was held on March 22, 1988. The trustee took no position on the DMV's objection, but recommended confirmation of the plan if the DMV's objection was overruled. The Court reserved decision.

On June 21, 1988 the Court granted a motion by Hudson County Legal Services Corporation ("HCLS") for leave to file a brief as *amicus curiae* on the issues raised by the DMV's objection to confirmation. HCLS's brief noted certain relevant facts regarding a Merit Rating Plan surcharge which had not previously been disclosed to this Court. The first is that a surcharge is

imposed on drivers with the pertinent convictions regardless of whether they own a motor vehicle.[1] The second is that the DMV sends a form letter to all surcharged drivers who file bankruptcy petitions taking the position that surcharges are not "debts" and are therefore nondischargeable, and that the automatic stay of Code § 362(a) does not apply.

On August 17, 1988 counsel stipulated the foregoing facts in a phone conference with the Court.[2]

## CONCLUSIONS OF LAW

### I.

Its legislative history explains that the New Jersey Automobile Insurance Reform Act of 1982 ("the Insurance Reform Act"), 1983 N.J.Laws c. 65, N.J.S.A. 17:29A–33 et seq., was intended to address the problem of high automobile insurance rates in this State. The Insurance Reform Act mandated certain changes in rate calculation to correct inequities which existed under the preceding system. It restricts variations in premiums of similarly classified insureds. It also deals with certain violations through imposition of uniform surcharges under the Merit Rating Plan.

The surcharges are billed and collected by the DMV, which retains 20% for administrative expenses and remits 80% to the New Jersey Automobile Full Insurance Underwriting Association (commonly known as the "Joint Underwriting Association" or "JUA"). N.J.S.A. 17:29A–35(b)(2). The JUA administers an insurance pool in which drivers may obtain automobile insurance if they are otherwise unable to do so. Statement of N.J. Senate Labor, Industry and Professions Committee to 1986 N.J. Laws c. 211, printed after N.J.S.A.

17:30E–3 (West Supp.1988). The JUA is not a state agency. N.J.S.A. 17:30E–4.

In addition to the Merit Rating Plan surcharges, the JUA obtains revenue from insurance premiums and from other surcharges resulting from accidents. N.J.S.A. 17:29A–35(a). When the total revenue is insufficient, the Insurance Commissioner can impose "residual market equalization charges" on all auto insurance policyholders. N.J.S.A. 17:30E–3(a) and 17:30E–8(b). The Court will take judicial notice that the JUA has a huge deficit, and that residual market equalization charges have recently been, and may continue to be, imposed in an effort to keep the JUA solvent. See e.g., Newark Star Ledger, February 9, 1988.

The only New Jersey state court case which has considered the Merit Rating Plan surcharge is Clark v. New Jersey Div. of Motor Vehicles, 211 N.J.Super. 708, 512 A.2d 588 (App.Div.1986). The court in that case stated that the surcharge is a civil penalty which is "based upon an individual's driving history and sets qualifications for the offender's continued driving on the highway." Id., 211 N.J.Super. at 711, 512 A.2d 588. The Court held that the Merit Rating Plan surcharge does not violate constitutional prohibitions against ex post facto laws. Id., 211 N.J.Super. at 211, 512 A.2d 588. Unfortunately, the Clark case sheds little light on the issues in this case.

However, the case of State of New Jersey, Division of Motor Vehicles v. Robert and Dorothy Graham (In re Graham), 85 B.R. 713 (Bankr.D.N.J.1988) (Hon. William H. Gindin, U.S.B.J.) is on point. In that case debtor Robert Graham had been convicted of operating a motor vehicle under the influence of alcohol in violation of N.J. S.A. 39:4–50. As a result, a Merit Rating

---

**1.** In the case of Robert Lugo v. Glenn Paulsen, Adversary Proc. No. 88–0127, presently pending in the Newark vicinage before the Honorable William F. Tuohey on this issue, and in which HCLS represents the debtor/plaintiff, a surcharge was imposed on the debtor although he does not own an automobile.

**2.** As previously noted, Bankruptcy Rule 3020(b) provides that an objection to confirmation is governed by Bankruptcy Rule 9014, which pro-

vides the procedure for determination of contested matters by motion. Fed.R.Civ.P. 43(e), incorporated by reference in Bankruptcy Rule 9017, provides that when a motion is based on facts not appearing of record, the court may hear the matter on affidavits presented by the respective parties. No affidavits were submitted in this case. The resulting lack of evidence was remedied by the stipulation requested and obtained by the Court.

Plan surcharge was imposed. Graham and his wife then filed a petition for relief under Chapter 7 of the Bankruptcy Code. The DMV then brought an action to determine the dischargeability of the surcharge.

Judge Gindin determined that a Merit Rating Plan surcharge "is simply an additional premium payable for the necessary insurance." *Id.*, 85 B.R. at 716 (Footnote omitted). Analogizing the case to others in which prebankruptcy experience was used to determine postbankruptcy insurance premiums, Judge Gindin held that because the surcharge in that case was not payable until after the petition was filed, the surcharge was not a "debt" within the meaning of Code § 101(11), and hence was not dischargeable.

## II.

Code § 101(11) defines "debt" as "liability on a claim." Code § 101(4)(A) defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..." The legislative history to the Bankruptcy Reform Act of 1978 states that "[t]he terms are coextensive: a creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 310 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6267; *see also* S.Rep. No. 95–989, 94th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5809. As to the definition of "claim," the legislative history states:

> By this broadest possible definition, and by the use of the term throughout title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, p. 6266; S.Rep. No. 95–989, 95th Cong., 2d Sess. 21–22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5807, 5808.

The courts have acknowledged the intention of Congress that the term "claim" is to be construed broadly. *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); *Matter of M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *In re Remington Rand Corp.*, 836 F.2d 825 (3d Cir.1988); *In re A.H. Robins Co., Inc.*, 63 B.R. 986, 990 (E.D.Va.1986), *aff'd sub nom. Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.1988).

The DMV argues that a Merit Rating Plan surcharge is not a "debt" as defined by Code § 101(11) because the surcharge is a supplemental insurance premium imposed prospectively as the measure of the higher risk posed by the surcharged driver. (DMV brief pp. 17–19). In accepting that argument, the court in *Graham* relied on *In re A.C. Williams Co.*, 51 B.R. 496 (Bankr.N.D.Ohio 1985) and *In re Primrose Bedspread Corp.*, 67 B.R. 659 (Bankr.D.N.J.1986). In both of those cases it was held that the states' use of a debtor's prepetition experience to determine postpetition insurance rates did not violate the Bankruptcy Code.

There is however, a crucial distinction between the facts in *A.C. Williams* and *Primrose Bedspread* and the facts in this case. Although the DMV went to great lengths in this case to argue that Merit Rating Plan surcharges are insurance premiums, the DMV neglected to mention that *such surcharges are imposed on the driver even if he or she does not own a vehicle.* The debtor did not mention that fact either, and probably wasn't aware of it. The court in *Graham* may also have been unaware of it. It was only after HCLS made that allegation in its amicus curiae brief (p. 10), and the Court asked counsel for the DMV about it in the phone conference of August 17, 1988, that counsel for the DMV admitted that the surcharge is imposed regardless of whether the driver owns a vehicle.

The reason that fact is crucial is that the Court can take judicial notice that in New

Jersey, *the owner* of a vehicle is required to have insurance as a condition to lawful operation. A driver other than the owner can operate a vehicle with the owner's permission as long as the owner has insurance on the vehicle. The driver does not need his or her own insurance. It is of course true that generally the driver of a vehicle is also its owner, and it is that fact which gives a deceptive appeal to the argument that a Merit Rating Plan surcharge is insurance. However, if it is the owner who is required to obtain insurance, and if a surcharge is imposed on the driver rather than the owner, the surcharge is not insurance.

■ This case would perhaps be analogous to *A.C. Williams* and *Primrose Bedspread* if the Merit Rating Plan surcharge was imposed on the owner of the vehicle which was driven during the violations in question. In that event the argument that the surcharge is additional insurance would be more plausible. Because, however, the surcharge is imposed on the driver rather than the owner, it is not insurance—at least, not for the driver. The owners who purchase insurance from the JUA may benefit from the Merit Rating Plan surcharges. In particular, the owner of the vehicle driven by another during an offense for which a surcharge is imposed may benefit, if the alternative is to have the owner's premium increased. But for the bankruptcy of a surcharged driver, the present arrangement may indeed be most equitable as between all concerned. However, that is not the issue here. The issue is whether a Merit Rating Plan surcharge provides any insurance, postpetition or otherwise, to the driver upon whom it is imposed, and it plainly does not. It is, rather, a penalty imposed to supplement the JUA fund. It follows that this Court respectfully disagrees with the conclusion of the court in *Graham, supra,* 85 B.R. at 716, that the surcharge "is simply an additional premium payable for the necessary insurance." *Id.,* 85 B.R. at 716 (footnote omitted).

This Court also disagrees with the conclusion in *Graham* that there is no prepetition "right to payment," and that therefore the surcharge is not a "claim" as defined by Code § 101(4)(A). In this case the offenses occurred, and the surcharges were all imposed, before the petition was filed. Part of the surcharges were payable prepetition, and part were payable postpetition, but that is irrelevant. "In most cases, the claim or cause of action will arise simultaneously with the underlying act." *Matter of M. Frenville Co., Inc., supra,* 744 F.2d at 335. State law determines the point at which the claim or cause of action arises. *Id.,* 744 F.2d at 337. Under N.J.S.A. 17:29A-35(b)(2), the obligation to pay Merit Rating Plan surcharges arises on the date of the offenses for which the driver is convicted. The "right to payment" and hence the claim for the surcharges therefore arose before the petition was filed.

The DMV argues alternatively that the surcharges are not "debts" because the DMV cannot obtain a money judgment against the driver or create a lien in the amount of the surcharge. However, to construe the term "debt" so narrowly would contravene the clear intention of Congress that the term "claim" (and hence the coextensive term "debt") is to be given the broadest possible definition. The State could have created a statutory right to a money judgment for the surcharge; the fact that it did not elect to do so does not change the nature of the surcharge for bankruptcy purposes. Further, the right to a money judgment is only one procedural device for compelling payment; as the HCLS brief noted, the threat of loss of a driver's license is undoubtedly a more effective collection device than the threat of a money judgment. Lastly, perhaps the ultimate proof that the surcharge is a "right to payment," and hence a "debt," is the mere fact that the State is seeking payment; the Court would not lightly conclude that the State is seeking something that it has no right to seek.

It follows from all of the foregoing that Merit Rating Plan surcharges are "debts" within the meaning of Code § 101(11).

### III.

In addition to its failure to mention that Merit Rating Plan surcharges are imposed

on a driver regardless of whether he or she owns a vehicle, the DMV also failed to inform the Court that it sends a form letter to all surcharged drivers who file bankruptcy petitions taking the position that the surcharges are not "debts," are nondischargeable, and that the automatic stay of Code § 362(a) does not apply.

Code § 362(a) provides that the filing of a bankruptcy petition automatically stays:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \* \* \*

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . .

The legislative history states that the scope of the automatic stay is broad. "It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 174–75 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6134–35.

As previously noted, the Merit Rating Plan surcharges imposed on the debtor are claims that arose before the commencement of this bankruptcy case. It follows that efforts to collect those claims are subject to the automatic stay of Code § 362(a), unless one of the exceptions in Code § 362(b) applies.

Code § 362(b) provides in pertinent part that the filing of a bankruptcy petition does not operate as a stay

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. . . .

The legislative history of Code § 362(b)(4) describes its scope:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 343 (1977), U.S.Code Cong. & Admin.News 1978, p. 6299; S.Rep. No. 95–989, 95th Cong., 2d Sess. 52 (1978), U.S.Code Cong. & Admin.News p. 5838. Code § 362(b)(4) is "intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong.Rec. H11,092 (daily ed. Sept. 28, 1978), S17,409 (daily ed. Oct. 6, 1978) (remarks of Rep. Edwards and Sen. DeConcini).

The imposition of a Merit Rating Plan surcharge is an action or proceeding to enforce the DMV's regulatory power within the meaning of Code § 362(b)(4), and is therefore not subject to the automatic stay. However, while *imposition* of a surcharge is not stayed, it is clear that *collection* of such a surcharge is stayed. *See, e.g.,* Code § 362(b)(5), which provides that collection of a money judgment obtained in an action or proceeding to enforce police or regulatory powers is stayed, even if the action or proceeding is not otherwise stayed. *See also In re Sampson,* 17 B.R. 528, 530 (Bkrtcy.D.Conn.1982).

The Court therefore holds that although imposition of a Merit Rating Plan surcharge is not stayed because of Code § 362(b)(4), the collection from a debtor in bankruptcy of a Merit Rating Plan surcharge imposed as the result of a conviction for an offense which occurred before

the bankruptcy petition was filed is subject to the automatic stay of Code § 362(a).

### IV.

█ As an alternative to the DMV's argument that the surcharges aren't "debts," the DMV also argues that if the surcharges are "debts," the plan must be modified to comply with N.J.S.A. 17:29A–35 et seq. This is an objection to the length of the delay in payment. N.J.S.A. 17:29A–35(b)(2) provides in part that upon a showing of indigency, the DMV may authorize payment of a surcharge on an installment basis over a period not to exceed ten months. By contrast, this debtor proposes to pay his surcharges over fifty-four months pursuant to Code § 1322(c), which authorizes payments under a Chapter 13 plan over a period of three to five years.

The short answer to this part of the DMV's objection is that where there is a conflict between state statutes and the Bankruptcy Code or other federal statutes, state law must yield by virtue of the Supremacy Clause of the United States Constitution. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Here there is a conflict between the authorization under N.J.S.A. 17:29A–35(b)(2) for an indigent to pay Merit Rating Plan surcharges over ten months, and the authorization under Code § 1322(c) for payments under a Chapter 13 plan over three to five years. The DMV's argument that the debtor's plan must comply with N.J.S.A. 17:29A–35(b)(2) is therefore without merit.

### V.

█ The remaining issue is whether suspension of the debtor's driver's license solely because of noncompliance with the terms of N.J.S.A. 17:29A–35(b)(2) regarding payment of the Merit Rating Plan surcharges violates Code § 525. As previously noted, the DMV suspended Bill's license because he did not pay the initial installments of the surcharge when due, but temporarily reinstated the license at Bill's request pending the Court's decision in this matter.

Code § 525 provides in pertinent part that:

> ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

#### A.

The debtor's Chapter 13 plan proposes to pay the entire amount of the Merit Rating Plan surcharges, and he therefore does not seek to discharge any part of the surcharges. However, the United States Court of Appeals for the Third Circuit has held that § 525 only applies if the debt in question is dischargeable. *Johnson v. Edinboro State College*, 728 F.2d 163, 165 (3d Cir.1984). Thus, in order to determine the applicability of Code § 525 to this case, the Court must first determine whether Merit Rating Plan surcharges are dischargeable in Chapter 13.[3]

The only exceptions to discharge in Chapter 13 are debts as to which the plan cures

---

**3.** In a Chapter 7 or 11 case, the court would have to determine whether Merit Rating Plan surcharges are penalties payable to governmental units within the meaning of Code § 523(a)(7), and thus exceptions to discharge in Chapters 7 and 11. However, by virtue of Code § 1328(a), such penalties are not exceptions to discharge in Chapter 13. The court expresses no opinion on whether such surcharges are penalties within the meaning of Code § 523(a)(7). *See also* § 523(a)(9), which would also have to be considered in certain Chapter 7 and 11 cases.

defaults and on which the last payment is due after completion of the plan under Code § 1328(a)(1), and alimony, maintenance or support under Code § 1328(a)(2).

Merit Rating Plan surcharges will not be an exception to discharge under Code § 1328(a)(1) unless a debtor voluntarily elects to cure a default in the DMV's payment terms, and the last payment is due under the DMV's schedule after the plan is completed. The concept of curing defaults in Chapter 13 relates primarily to mortgages and other long-term contracts which a debtor wishes to retain. Further, it will almost always be the case that the three to five year period for Chapter 13 plan payments under Code § 1322(c) will extend beyond the three year period for payment of Merit Rating Plan surcharges under N.J. S.A. 17:29A–35(b)(2). Thus, while it is theoretically possible that a particular Merit Rating Plan surcharge might fall within Code § 1328(a)(1), that possibility seems very remote.[4] Most importantly, however, because a debt is only an exception to discharge under § 1328(a)(1) if the debtor's plan voluntarily cures any default, a Merit Rating Plan surcharge will not fall within § 1328(a)(1) unless the debtor wants it to. The surcharge will always be "dischargeable," in other words, unless the debtor chooses otherwise.

As to Code § 1328(a)(2), Merit Rating Plan surcharges will obviously never be alimony, maintenance or support.

The Court therefore holds that all Merit Rating Plan surcharges are dischargeable in Chapter 13.

### B.

Having disposed of the threshold issue of dischargeability, it is necessary to return to analysis of Code § 525. That section was intended to codify the result of *Perez v. Campbell,* supra which held that an Arizona statute conflicted with the Bankruptcy Act, and thus violated the Supremacy Clause of the United States Constitution, because it required payment of a tort judgment as a condition to renewal of a driver's license even though the judgment had been discharged in bankruptcy.

A close reading reveals that the relevant provisions of Code § 525(a) state that "a governmental unit may not ... suspend ... a license ... to ... a person that is or has been a debtor under this title ... solely because such debtor ... has not paid a debt that is dischargeable in the case under this title...." In this case, it has been established that the DMV is a governmental unit which suspended the debtor's driver's license solely because he failed to pay Merit Rating Plan surcharges, which are dischargeable in Chapter 13. It follows inexorably that Code § 525 applies in this case, and that suspension of the debtor's license solely because of failure to pay surcharges, or because of any delay in payment occasioned by the Chapter 13 plan, violates Code § 525. *Smith v. Pennsylvania Dep't of Transp.,* 66 B.R. 244 (E.D.Pa. 1986). An injunction will therefore issue prohibiting the DMV from suspending Bill's license for nonpayment of the Merit Rating Plan surcharges at issue in this case for so long as his bankruptcy case remains open, and permanently thereafter if all payments under this plan, or under any modified plan which may hereinafter be confirmed by the Court, are completed.

### VI.

It is appropriate to comment on certain policy issues which are in the background of this case, to place all relevant considerations in their proper context. Most of the DMV's argument as to why Merit Rating Plan surcharges are not debts and not dischargeable boils down to the position that the public policy concerns reflected in the surcharges are too important to permit the surcharges to be discharged. That is a plausible argument. However it is at least as plausible to argue that debts incurred as

---

4. Even if a particular Merit Rating Plan surcharge did technically fit within Code § 1328(a)(1), so that Code § 525 would not apply, the Court would clearly have the power under Code § 105 to enjoin the DMV from sus-

pending the debtor's license. See eg. *Penn Terra Ltd. v. Department of Environmental Resources, Commonwealth of Pennsylvania,* 733 F.2d 267, 273 (3d Cir.1984).

a result of fraud, embezzlement, larceny, or willful and malicious injury to another human being should not be dischargeable, whether in Chapter 13 or otherwise. And yet, it is beyond question that such debts are dischargeable in Chapter 13. Compare Code § 1328(a) with Code § 523(a)(2), (4) and (6). As the Third Circuit noted in *Johnson v. Edinboro State College, supra*, 728 F.2d at 166 n. 4, "Congress intended the broader discharge to act as an incentive to debtors to complete performance under their Chapter 13 plans." Put another way, Congress intended to encourage debtors to attempt at least partial payment in Chapter 13 of debts which are dischargeable in Chapter 7, at the expense of certain debts which are not dischargeable in Chapter 7, by making the latter dischargeable in Chapter 13. The theory apparently was that on balance, it is preferable for a debtor to make at least a partial payment of all debts in Chapter 13, rather than complete payment of some which aren't dischargeable in Chapter 7 and no payment of others which are dischargeable in Chapter 7.

If the State of New Jersey wishes to make its surcharges nondischargeable in Chapter 13, it must take up that cause with Congress, not the courts. As HCLS properly noted on page 22 of its brief,

> [Courts] are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond that is to usurp a power which our democracy has lodged in its elected legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge nor to contract it.

F. Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 533–34 (1947). For that reason, it has been held in this Circuit that the courts may not create a new priority of payment in bankruptcy where the Congressional mandate is clear that no such priority shall be accorded. *In re Columbia Ribbon Co.*, 117 F.2d 999, 1002 (3d Cir.1941). For the same reason, it is equally clear that the courts have no right to create a new exception to discharge in Chapter 13, no matter how compelling New Jersey believes its public policy concerns to be.

## SUMMARY

The Court holds the following:

1. Merit Rating Plan surcharges under N.J.S.A. 17:29A–35 are "debts" as defined by Code § 101(11).

2. Although imposition of a Merit Rating Plan surcharge is not stayed because of Code § 362(b)(4), the collection from a debtor in bankruptcy of a Merit Rating Plan surcharge imposed as the result of conviction for an offense which occurred before the bankruptcy petition was filed is subject to the automatic stay of Code § 362(a).

3. The payment schedule required by N.J.S.A. 17:29A–35 for Merit Rating Plan surcharges is not applicable in bankruptcy.

4. Merit Rating Plan surcharges are dischargeable in Chapter 13.

5. It is a violation of Code § 525 to suspend a debtor's driver's license solely because of failure to pay Merit Rating Plan surcharges which are dischargeable in bankruptcy. An injunction will therefore issue prohibiting the DMV from suspending the debtor's license for nonpayment of the surcharges at issue in this case for so long as the case remains open, and permanently thereafter if all payments under this plan, or under any modified plan which may hereinafter be confirmed by the Court, are completed.

6. The debtors' Chapter 13 plan is confirmed.

The attorney for the debtor shall submit an order consistent with this opinion.