**In re Christopher GEIGER and Michele Geiger, Debtors.**

**Christopher GEIGER and Michele Geiger, Plaintiffs,**

**v.**

**The COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION; and Howard Yerusalim, Secretary of Transportation, Defendants.**

**Bankruptcy No. 91–16256S.**
**Adv. No. 91–1092S.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 4, 1992.

Robert F. Salvin, Gregory Rutchik, Certified Legal Intern, Temple Legal Aid Office, Philadelphia, Pa., for plaintiffs.

Marc Alan Werlinsky, Office of Chief Counsel, Com. of Pa., Dept. of Transp., King of Prussia, Pa., for defendants.

Edward Sparkman, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The issue upon which resolution of the instant "tempest in a teapot" turns is whether a "restoration fee" of $25 which must be paid to the Commonwealth of Pennsylvania Department of Transportation ("PENNDOT") to obtain reinstatement of a Pennsylvania driver's license, pursuant to 75 Pa.C.S. § 1960, is a pre-petition "debt" which is potentially dischargeable in the Debtors' Chapter 13 bankruptcy case. On the strength of the decision in *Lugo v. Paulsen*, 886 F.2d 602, 604–07 (3d Cir. 1989), we hold that the restoration fee is a "debt" and that therefore the Co–Plaintiff and Wife–Debtor in this proceeding, MICHELE GEIGER ("the Plaintiff"), cannot be deprived of her driver's license on the basis of non-payment of such a fee in light of 11 U.S.C. § 525(a). However, assuming *arguendo* that the failure of the Defendants, PENNDOT and HOWARD YERUS-ALIM, Secretary of Transportation, to restore the Plaintiff's driving privileges violated the automatic stay, collection of damages against PENNDOT is barred by the Eleventh Amendment and the inability of the Plaintiff to prove that the Defendants committed forbidden acts with fair warning of their illegality.

### B. PROCEDURAL HISTORY

The Plaintiff and her husband, CHRISTOPHER GEIGER (collectively "the Debtors"), filed the joint Chapter 13 case underlying the instant proceeding on November 22, 1991. A confirmation hearing is scheduled on April 21, 1992.

The Debtors' abject poverty is borne out by the fact that, allegedly due in large part to the Plaintiff's loss of her driver's license and consequently of her employment as a school bus driver, the Debtors were unable to pay even the modest $22.31 monthly sum required under their plan. On December 16, 1991, they moved to abate their plan payments until the Plaintiff regained her employment, which we allowed in part, requiring them to commence payments in May, 1992, irrespective of the Plaintiff's employment status. *See* 11 U.S.C. § 1326(a)(1).

The instant adversary proceeding was commenced on December 20, 1991. Trial was scheduled on February 6, 1992. Our attempt to mediate a resolution in light of

the fact that the dispute appeared to involve only $25 was unsuccessful, and a trial ensued on February 13, 1992. The parties' interest beyond the small sum involved was further exemplified by their request, which we granted, to submit post-trial Briefs in support of their respective positions at one-week intervals thereafter.

## C. FACTUAL HISTORY

On May 21, 1988, the Plaintiff was involved in a motor vehicle accident which ultimately resulted in a 1990 lawsuit against her and the entry of a default judgment in the amount of $4,656.57. On May 24, 1991, while employed by the School District of the City of Philadelphia as a bus driver, the Plaintiff received a letter from PENNDOT advising her that her driver's operating privileges were suspended, effective June 28, 1991.

On July 30, 1991, PENNDOT sent her a further letter, indicating that her driving privileges would not be restored until she did the following:

1. Paid a $25 "restoration fee." *See* 75 Pa.C.S. § 1960.

2. Provided proof that all motor vehicles registered in her name were insured; or if she claimed that no vehicles were registered in her name, supplied a notarized affidavit verifying same. *See* 75 Pa. C.S. § 1786.

3. Provided proof that the judgment against her had been satisfied or that payments were being made pursuant to an agreement with the judgment creditor. *See* 75 Pa.C.S. §§ 1772–75.

On December 11, 1991, apparently in light of her bankruptcy filing, PENNDOT sent a revised letter to the Plaintiff, which reiterated the first two requirements to restore her license, but omitted the third requirement.

The Plaintiff testified that the only motor vehicle which she owned was an inoperable 1979 Oldsmobile. Further, she stated that, on January 7, 1992, she executed an Affidavit stating that she did not own a motor vehicle and was submitting the registration and tags for the Oldsmobile which she did own to PENNDOT. Robert F. Salvin, Esquire ("Salvin"), a supervisor of the Temple Legal Aid Program, which is representing the Debtors, later testified that his office mailed the tag, registration, and affidavit with a covering letter to Timothy Wile, Esquire, PENNDOT's Assistant Counsel ("Wile"), on January 7, 1992. Copies of all of the items dispatched by mail from Salvin's office were admitted into evidence.

Wile testified that neither he nor anyone else associated with PENNDOT ever received the letter of January 7, 1992, or its enclosures. Wile did state, however, that, despite the self-contradictory content of the Affidavit (it states that the Plaintiff did *not* own a vehicle, yet was sending materials relating to a vehicle which she stated that she *did* own), receipt of the enclosures would have been sufficient to satisfy the second of the three original criteria for the Plaintiff's license restoration. Wile explained that PENNDOT accepts receipt of the registration and tags as proof of a vehicle owner's inability to legally operate the vehicle, because proof of insurance would be necessary before the vehicle could be re-registered.

There is a presumption that a properly-directed letter placed in the mails has reached its destination. *See, e.g., Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911, 913, 915 (3d Cir.1991); and *In re Ryan*, 54 B.R. 105, 106–07 (Bankr.E.D.Pa. 1985). Employing this presumption, we conclude that the Plaintiff did comply with the second requirement for restoration of her license, and we are prepared to enter, as part of our Order, a finding that this criterion has been satisfied, which should suffice for PENNDOT's purposes. We note that, at trial, PENNDOT's counsel ultimately agreed, in light of the testimony of the Plaintiff and Salvin, that PENNDOT would accept a new Affidavit from the Plaintiff as satisfaction of the second criterion for restoration of her license.

## D. DISCUSSION

The only real issue remaining, at the close of trial, was whether the Plaintiff

could recover her driving privileges prior to payment of the $25 restoration fee, which devolved into a dispute as to whether the said fee was or was not a "debt." The Debtor argued that PENNDOT's pre-petition demand for this sum classified it as a "debt." PENNDOT, meanwhile, argued that it could not file a proof of claim for this sum because it was payable only upon the condition that the Plaintiff sought restoration of her license. Therefore, PENNDOT contended that the fee was not really a "debt."

This court must confess that it found resolution of this issue very elusive until it recalled the decision of the Court of Appeals in *Lugo v. Paulsen, supra.* In that case, 886 F.2d at 604–07, the Court addressed at length the issue of whether surcharges levied against New Jersey motorists found guilty of charges relating to driving under the influence of alcohol on future registrations or renewals of driving privileges were "debts."

> The *Lugo* court begins by noting that [t]he Bankruptcy Code defines "debt" as a "liability on a claim," 11 U.S.C. § 101(11) (1982), and defines "claim" … to allow the broadest possible interpretation of "claim," as the Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, be able to be dealt with in bankruptcy" to permit the "broadest possible relief in the bankruptcy court." H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 21 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5807, 5963, 6266.

*Id.* at 605. An argument very similar to that made on February 13, 1992, by PENNDOT is then disposed of in the following passage:

> Appellees also argue that the Plan surcharge is not a "debt" because it cannot be reduced to a money judgment and therefore does not constitute a "right to payment" under the definition of claim in 11 U.S.C. § 101(4)(A). We agree with the district court, however, that although New Jersey may not reduce surcharge obligations to a money judgment as the

method to enforce its statutory scheme, "the threat of a suspended driver's license provides appellees with ample means to enforce its right to payment." [*In re Lugo,*] 94 B.R. [335,] at 340 n. 4 [ (D.N.J.1989) ].

The *Lugo* court then considered the issue of whether the surcharge was a *pre-petition* "debt." The court concluded that, since the right to payment arose when the debtor was convicted of driving under the influence of alcohol, the obligation was indeed a pre-petition debt. *Id.* at 607.

PENNDOT unsuccessfully strives to distinguish the New Jersey surcharge in question in *Lugo* from the restoration fee at issue in this case. It claims that its New Jersey counterpart treated the surcharge as a debt by revoking the debtor's driving privileges if he failed to pay. This characterization is perhaps true, but it is difficult to see where this represents any distinction from the facts here. PENNDOT will not restore the Plaintiff's license, the issue of her having a registered vehicle having been resolved, only because she has filed to pay the restoration fee. Also noted by PENNDOT is the fact that ninety (90%) percent of the New Jersey surcharge proceeds were remitted to an association of insurers and only ten (10%) percent reflected administrative costs, while the entire instant restoration fee is purportedly devoted to administrative costs.

However, despite the relatively small sum in issue, there was no evidence presented by PENNDOT in the instant record regarding for what the restoration fee proceeds are utilized. Furthermore, we fail to see where the fact that a given portion of the fees are directed to administrative costs is relevant to the issue of whether a charge is a "debt." We find no aspect of the *Lugo* decision to be dependent on this factor. *Compare In re Colon,* 102 B.R. 421, 427 (Bankr.E.D.Pa.1989), *appeal dismissed sub nom. Szostek v. Hart,* 123 B.R. 719 (E.D.Pa.) *aff'd in part & appeal dismissed in part,* 941 F.2d 242 (3d Cir.1991) ("*Colon I*") (traffic fines are "debts," non-payment of which cannot be

utilized as a basis to withhold driving privileges).

Subsequent to the *Lugo* decision, the Supreme Court has issued two Opinions which, if anything, expand the principle that the terms "claim" and "debt" must be broadly construed. *Johnson v. Home State Bank,* — U.S. —, 111 S.Ct. 2150, 2153–56, 115 L.Ed.2d 66 (1991); and *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). We therefore believe that *Lugo*'s broad definition of the term "debt" is extremely well-supported.

*Lugo* was, however, a Chapter 7 case, and the Court of Appeals ultimately affirmed the decision of the district court that the surcharge "debts" were nondischargeable under 11 U.S.C. § 523(a)(9). 886 F.2d at 608–11. By way of contrast, there is no § 523(a)(9) issue in this matter, since the Plaintiff was not convicted of any crime, let alone any infraction due to intoxication while driving. Furthermore, the Debtor's bankruptcy case is a Chapter 13 case, and the broad Chapter 13 discharge would, except for debts within the scope of 11 U.S.C. §§ 1328(a)(2) and 523(a)(9), result in a discharge of any debt created by the restoration fee. *See In re Adams,* 106 B.R. 811 (Bankr.D.N.J.1989); and *In re Bill,* 90 B.R. 651 (Bankr.D.N.J.1988) (New Jersey surcharges held dischargeable in Chapter 13 cases predating the 1990 amendment to § 1328(a)). *Cf. Davenport, supra,* 495 U.S. at 562, 110 S.Ct. at 2133 (restitution debt which was not dischargeable in a Chapter 7 case in light of 11 U.S.C. § 523(a)(7) was, prior to the 1990 amendment adding 11 U.S.C. § 1328(a)(3) to the Code, dischargeable in a Chapter 13 case).

It is perhaps pertinent to note, at this juncture, that it was established, in *In re Johnson–Allen,* 871 F.2d 421, 423, 428 (3d Cir.1989), *aff'd sub nom. Davenport, supra,* that the issue of dischargeability of obligations in a Chapter 13 case has been held to not generally be "ripe" until the debtor "has completed the Chapter 13 plan," and is prepared to receive a discharge order. The confirmation hearing in this case has not yet been conducted.

Therefore, discharge, which will occur only when all payments under a confirmed plan are completed, is far off. Consequently, we cannot determine whether the Plaintiff's restoration fee, though clearly arising from a pre-petition judgment and hence apparently ultimately dischargeable, is in fact dischargeable at this time. *Id.* at 429.

However, determination of the issue of whether the Plaintiff's restoration fee indebtedness can be discharged is not necessary to a resolution of the issue of whether PENNDOT can validly withhold the Debtor's driving privileges because the restoration fee is unpaid. The restoration fee charge is certainly discharge*able* and 11 U.S.C. § 525(a) provides that

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, ... against, a person that is or has been a debtor under this title ... solely because such ... debtor is or has been a debtor under this title ..., or has not paid a debt that is dischargeable in the case under this title....

*See Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Smith v. PENNDOT,* 66 B.R. 244, 245–46 (E.D.Pa. 1986); *Henry v. Heyison,* 4 B.R. 437, 441–42 (E.D.Pa.1980); and *In re Patterson,* 10 B.R. 860 (Bankr.E.D.Pa.1981).

The Debtor is therefore entitled to the greater part of the non-monetary relief which she seeks, *i.e.,* a declaration that PENNDOT's refusal to restore her license for any of the reasons set forth in its letter of December 11, 1991, is not permissible under the Bankruptcy Code. We will phrase the Order to grant declaratory relief rather than as a mandatory injunction directing PENNDOT to restore the license, because there could possibly be other grounds, not related to the matters at issue in this proceeding, on the basis of which PENNDOT could conceivably refuse to restore the Plaintiff's driving privileges. *Compare In re Nejberger,* 934 F.2d 1300, 1303–04 (3d Cir.1991). However, no other grounds were recited at the trial or throughout this proceeding, and therefore it appears that the judicial effect of this

decision should be immediate restoration of the Plaintiff's driving privileges.

■ Both parties have argued at length about whether the Plaintiff's driving privileges are "property of her estate" under 11 U.S.C. § 541, and whether 11 U.S.C. §§ 362(a)(1), (a)(2), (a)(3) or (a)(6) were violated by PENNDOT's refusal to immediately restore the Plaintiff's driving privileges. Having ruled that the Plaintiff is entitled to relief under 11 U.S.C. § 525(a), it is not necessary to reach these issues, except insofar as they relate to a possible claim of the Plaintiff for monetary damages under 11 U.S.C. § 362(h), or as compensation for PENNDOT's potential contempt of court.[1]

■ However, it appears that claims for such damages could not be granted to the Plaintiff on other grounds. Firstly, we note that, in *Hoffman v. Connecticut Dep't. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the Court appears to foreclose any imposition of monetary penalties against state governmental bodies or their subdivisions under 11 U.S.C. § 362(h) in light of the Eleventh Amendment. *See id.* at 109 n. 4, 109 S.Ct. at 2826 n. 4 (*Hoffman* dissenters conclude that the Eleventh Amendment precludes imposition of penalties under § 362(h) against state actors); and *In re James*, 120 B.R. 802, 816–17 (E.D.Pa.1990) ("*James II*"), rev'g in part & aff'g in part, 112 B.R. 687 (Bankr.E.D.Pa.1990) ("*James I*"); and rev'd on other grounds, 940 F.2d 46 (3d Cir.1991) ("*James III*"). *Cf. United States v. Nordic Village, Inc.*, — U.S. —, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (11 U.S.C. § 106(c) does not waive federal immunity). The only potential basis for any imposition of monetary damages against the instant Defendants is, therefore, under this court's contempt power. *See In re Colon*, 114 B.R. 890, 894–98 (Bankr.E.D.Pa.1990), *appeal dismissed sub nom. Szostek v. Hart*, 123 B.R. 719 (E.D.Pa.), aff'd in part & appeal dismissed in part, 941 F.2d 242 (3d Cir.1991).

■ However, to justify monetary damages for contempt, a party, particularly a governmental body, charged with contempt must be given a fair warning that the acts in issue are forbidden, and "any ambiguity in the law should be resolved in favor of the party charged with contempt." *United States v. Norton*, 717 F.2d 767, 774 (3d Cir.1983). *See also University Medical Center v. Sullivan*, 122 B.R. 919, 931, 932 (E.D.Pa.1990), *reaff'd on reconsideration*, 125 B.R. 121, 125–28 (E.D.Pa.1991) (party acting in violation of even the directives of the same court in an earlier similar case was held not liable for sanctions because the law was unsettled.)

■ For two reasons, a finding of contempt is not warranted here. Firstly, crediting Wile's testimony that PENNDOT never received the Debtor's registration and tags by mail despite their dispatch, PENNDOT had a separate, independent, and apparently justified basis to deny the Debtor's driving privileges through at least February 13, 1992.

■ Secondly, PENNDOT would appear to have had justification for concluding that its actions were exempt from the stay by the effect of 11 U.S.C. §§ 362(b)(4), (b)(5). We may have been inclined to hold that PENNDOT's withholding of the Debtor's driving privileges were collection activities stayed by operations of 11 U.S.C. §§ 362(a)(3), (a)(6), irrespective of the presence of §§ 362(b)(4), (b)(5). The latter Code sections only provide an exception to actions under §§ 362(a)(1) and (a)(2), respectively. Collection activities, as opposed to actions necessary to enforce governmental health, safety, and police powers (such as removing unsafe drivers from the highways) appear to be stayed, even as to governmental bodies. *See Colon I, supra*, 102 B.R. at 427–28.

However, this line of reasoning was clouded considerably by the decision of the

---

**1.** In their Complaint, the Debtors also make reference to the Defendants' alleged violation of 42 U.S.C. § 1983, which could trigger an award of attorneys' fees under 42 U.S.C. § 1988. Since this claim was not mentioned at trial or in their post-trial Brief, we assume that the Debtors have abandoned any such claim. *See Universe Tankships, Inc. v. United States*, 528 F.2d 73, 74–76, 77 (3d Cir.1975); and *In re Henderson*, 134 B.R. 147, 155 (Bankr.E.D.Pa.1991).

Court of Appeals in *James III.* The Court of Appeals there held that a forfeiture proceeding—involving, apparently, solely collection of money—was subject to § 362(b)(4). 940 F.2d at 50–51. The Court also did not seem particularly concerned that the *James* debtor relief upon §§ 362(a)(3), (a)(6), *see In re James I, supra,* 112 B.R. at 699–700, and that § 362(b)(4) does not apply to actions based upon §§ 362(a)(3), (a)(6). *James III,* 940 F.2d at 50–51.

Therefore, we conclude that the law in this area was too unsettled to support any order of contempt against the Defendants. *Cf. Adams, supra,* 106 B.R. at 832–33 (pre-*Hoffman;* court nevertheless decides that damages under § 362(h) or for contempt of court were inappropriate). We also note that the Plaintiff failed to quantify any damages to her as a result of the PENN-DOT's actions.

It is therefore immaterial to the outcome of this controversy and unnecessary for us to reach the issue of whether the Plaintiff's driving privileges should in fact be classified as "property of her estate" such as would support a claim under 11 U.S.C. § 362(a)(3). We note that §§ 362(a)(2) and (a)(6) do not, by their terms, require acts against "property of the estate" to invoke their respective applications, but rather only require acts to collect claims against debtors. 11 U.S.C. § 362(a)(2) requires an enforcement action against the debtor *or* against property of the estate. PENN-DOT's actions to collect its restoration fee which were taken directly against the Plaintiff, and therefore they appear to have been clearly within the scope of §§ 362(a)(1), (a)(2), (a)(6).

To the extent that it is relevant, we note that the courts in *Adams, Colon,* and *Bill* had little difficulty in concluding that a state's withholding of driving privileges is a violation of the automatic stay, suggesting that these courts believed that such "privileges" were indeed property of the respective debtors' estates. *See also Nejberger, supra,* 934 F.2d at 1301–03 (liquor license previously held by the debtor is property of its estate); and *In re Drau-*

*ghon Training Institute, Inc.,* 119 B.R. 921, 926 (Bankr.W.D.La.1990) (interest of training school in obtaining state certification is property of its estate). Despite PENNDOT's urging that any citizen's receipt of a driver's license is a "privilege" as opposed to a "right," it cannot be forgotten that the concept of "property of the estate" in bankruptcy, like the concept of a "claim" or "debt," is extremely broad. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05 n. 8, 103 S.Ct. 2309, 2313–14 n. 8, 76 L.Ed.2d 515 (1983); and *In re Shapiro,* 124 B.R. 974, 980–82 (Bankr.E.D.Pa.1991). It would therefore appear to embrace "privileges" as well as "rights." To the extent that it is necessary or relevant to do so, we would therefore be inclined to conclude that the Plaintiff's driver's license is property of her bankruptcy estate.

### E. CONCLUSION

We will therefore grant the Plaintiff (but not her co-debtor husband, whose very joinder in this proceeding as a plaintiff has never been explained or justified) limited declaratory and injunctive relief under 11 U.S.C. § 525(a), *i.e.,* a directive that the Defendants may not consider her failure to meet the financial responsibility requirement or her non-payment of the $25 restoration fee in determining whether to restore her driver's license.

